## DARLING *v.* BUTLER.

*(Circuit Court, S. D. New York.   February 5, 1891.)*

STATUTE OF FRAUDS—EQUITABLE TITLE.
    Where plaintiff executed and delivered to defendant a deed of certain land, the legal title passed, although it was intended by both parties that the deed should not take effect until defendant made a sale of the land for plaintiff, but the equitable title still remained in plaintiff, and a subsequent oral sale thereof to defendant was within the statute of frauds and void, and in an action for a balance of the purchase money a demurrer to the petition was properly sustained.

At Law.
*O. F. Hibbard*, for plaintiff.

*O. D. Barrett* and *James P. Lowrey*, for defendant.

WALLACE, J. The defendant has demurred to a complaint in an action at law to recover the price of land conveyed. The complaint alleges that December 18, 1883, at the city of Washington, the plaintiff delivered to defendant a deed conveying an undivided interest in real estate in New Mexico, known as the "Mora Grant," upon an expressed consideration of $25,000, "but the real consideration for said deed was entirely different from the consideration expressed," and that at the same time the defendant delivered to plaintiff an agreement in writing as follows:

"Received, Washington, D. C., December 18, 1883, of E. M. Darling, a deed of his interest in the Mora grant of New Mexico, for the purpose of making sale of said interest in connection with the sale of certain other interests in said grant now being negotiated by me. And I hereby agree, in case said sale shall not be consummated within a reasonable time, not to exceed six months from the date thereof, to return said deed to said Darling; or, in case I find it necessary to record said deed, I will within said time reconvey the interest conveyed to me by said deed; and if I sell said interest it shall be at a price not less than 75 cents per acre. I am to hold the deed as not delivered to me unless I shall record said deed. In case I make a sale of said Darling's interest it shall be on the same terms, both as to price and payments, that I may sell S. B. Elkins' and Thomas B. Catron's interest in said lands."

The complaint then alleges that in March, 1884, the defendant stated to the plaintiff that he would purchase his interest in the lands, and pay $75,000 therefor, and the plaintiff then agreed to accept the said sum of $75,000 in full; that on the 15th day of January, 1885, at Washington, the defendant requested the plaintiff to throw off $5,000 from the $75,000, which he had agreed to accept as aforesaid, representing that Elkins and Catron had agreed to take $70,000 for their interests, respectively, and plaintiff, relying upon that statement, agreed to accept $70,000 in full for his interest, and the defendant then and there promised and agreed to pay plaintiff $70,000 therefor; that the defendant thereafter paid plaintiff in various sums at different times $11,057, and "repeatedly promised the plaintiff that he would pay the full amount still unpaid of said $70,000." The complaint further avers that the plaintiff "did deliver to the defendant, and the defendant did accept from the plaintiff, actually and unconditionally, and not in escrow, the aforesaid deed, as and of the 15th day of January, 1885, for the consideration of $70,000," and that the whole of said sum is due and unpaid, except the sum of $11,057.

In considering what the case is as made by the complaint the averment of the delivery of the deed "of the 15th day of January, 1885, actually and unconditionally, and not in escrow," must be regarded as merely a statement of the legal effect of what is alleged to have taken place between the parties on that day,—the request to plaintiff by defendant to accept $70,-000 for the land, and the promise of the defendant to do so,—and of the subsequent payments made by defendant in recognition of his obligation. The deed was delivered December 18, 1883, and it must be assumed

from the facts stated that from that time the deed remained in the pos-session of the defendant; otherwise the narrative in the complaint of what took place prior to January 15, 1885, is wholly irrelevant. If the case stated discloses a cause of action to enforce an executory agreement for the sale of an interest in land, the statute of frauds, which requires such an agreement to be in writing, and subscribed by the party to be charged therewith, is a good defense. The provisions of this statute are in force both in the District of Columbia, where the agreement was made, and in New Mexico, where the land is situated. On the other hand, if the agreement of the 15th day of January, 1885, was merely a modification of the pre-existing pecuniary liability of the defendant growing out of the original conveyance to him, and did not in any way affect the title to the land, because the defendant had already acquired a complete title, the action can be sustained notwithstanding it was oral merely. A party who has fully performed an agreement on his part can recover the consideration promised by the other, notwithstanding the agreement, while executory, would not be enforceable under the statute of frauds. The latter cannot set up the statute as an excuse for not paying for the benefit he has derived by the other's performance; but whether a recovery in such a case can be had upon the promise which was the consideration for the performance, or only upon a *quantum meruit*, is a question upon which the authorities are not agreed. The logical doctrine would seem to be that the party who has performed is entitled to recover upon a promise implied by law from the acceptance of the benefit to pay what it is worth. In Browne, St. Frauds, § 12, the law is thus stated:

"Where a verbal contract has been executed on one side by the conveyance of property or the performance of services, the proper form of action to recover the value of the property or service is upon the implied promise arising from the plaintiff's performance; implied promises being not embraced by the statute. A recovery may also be had upon an account stated, where the defendant, after obtaining possession of the property, or having enjoyed the benefit of the services, acknowledges the liability, and promises to pay the sum stipulated."

In this state it is settled by an unbroken current of authority that when land has been conveyed the vendor can recover the purchase price orally agreed to be paid. *Shephard* v. *Little,* 14 Johns. 210; *Bowen* v. *Bell,* 20 Johns. 340; *Thomas* v. *Dickinson,* 12 N. Y. 364; *Cagger* v. *Lansing,* 43 N. Y. 550; *Vernol* v. *Vernol,* 63 N. Y. 45. It is apparent from the language of the receipt that when the deed was originally delivered the parties did not intend that the defendant should acquire the legal title to the land. They treated the deed merely as documentary evidence of title, and erroneously assumed that, notwithstanding its delivery to the defendant, and its acceptance by him, the legal title would not pass until he should convey the land to some other person, or record the deed; and, in case neither of these things were done, that by returning the deed to the plaintiff the title of the latter would remain as though he had never executed the deed. This misconception of the legal effect of

the transaction could not, however, alter the fact that there was a delivery of the deed, and an acceptance, by which the defendant acquired the legal title to the land, and so effectually that he could only divest himself of it by a reconveyance. The rule is ancient and familiar that a deed cannot be delivered in escrow to the grantee. When there is a valid delivery of a deed by the grantor to the grantee it is impossible to annex a condition to such delivery; and the delivery vests the title in the grantee, although it may be contrary to the intention of the parties. "When the words are contrary to the act which is the delivery the words are of none effect." Co. Litt. 36a. "If I seal my deed, and deliver it to the party himself to whom it is made, as an escrow upon certain conditions," etc., "in this case, let the form of the words be what it will, the delivery is absolute, and the deed shall take effect as his deed presently." Shep. Touch. 59. The modern cases recognize the doctrine fully, and apply it wherever it appears that the grantor intended to deliver and the grantee intended to accept the instrument as a conveyance without further act on the part of the grantor. *Worrall* v. *Munn*, 5 N. Y. 229; *Bracket* v. *Barney*, 28 N. Y. 333; *Braman* v. *Bingham*, 26 N. Y. 483; *Hinchliff* v. *Hinman*, 18 Wis. 138; *Ordinary* v. *Thatcher*, 41 N. J. Law, 407. Although the defendant acquired the legal title to the land by the delivery of the deed, he did not acquire the equitable title; that remained in the plaintiff, because by the agreement expressed in the receipt the defendant took the title only as a fiduciary to sell the land for the plaintiff and pay him the proceeds, or otherwise to reinvest him with the title. When the agreement of the 15th day of January, 1885, was made, the rights and interests of the parties remained as they were when the deed and receipt were exchanged; and the defendant was the owner of the legal title to the land, and the defendant of the equitable title. The agreement by which the defendant promised to pay the plaintiff $70,000 for the land implies that both parties still supposed that the legal title was in the plaintiff, and that no new conveyance from him was necessary to transfer to the defendant the complete title, legal and equitable. Nevertheless, the equitable interest could not be transferred by parol; and without a new deed, or a formal assignment or release of the plaintiff's equitable title, the defendant could acquire no better title to the lands than he had before. An oral agreement for the transfer of an equitable interest in lands is as inoperative under the statute of frauds as one for the transfer of a legal title. It was said by Chief Justice MARSHALL in *Hughes* v. *Moore*, 7 Cranch, 176:

"The court can perceive no distinction between the sale of land to which a man has only an equitable title, and a sale of land to which he has a legal title. They are equally within the statute."

It follows, therefore, that the agreement which is now sought to be enforced is void by the statute of frauds. It is still executory on the part of both parties. The defendant has not received the consideration for his promise. He has no better title to the land since than he had before. Notwithstanding all that has taken place, including the payments made by the defendant in part fulfillment of the agreement, the

plaintiff still remains the equitable owner of the land. He can still resort to a court of equity, and, upon tendering back what he has received, compel the defendant to reconvey, or, if the defendant has sold the land to a *bona fide* purchaser, compel him to account for its value or the proceeds. If the defendant had paid the $70,000 according to his promise, the plaintiff would doubtless be estopped from setting up the invalidity of the agreement. As it is, the agreement cannot be enforced by either party, and each is remitted, notwithstanding, to his pre-existing rights.

The demurrer is sustained.