[Civ. No. 2649.   Third Appellate District.—August 3, 1923.]

NATALINA DONDERO et al., Respondents, v. JUAN APARICIO et al., Appellants.

[1] CONTRACTS—SALE OF REAL PROPERTY—STATUTE OF FRAUDS.—An agreement for the sale of real property, or an interest therein, is nonenforceable, or furnishes no ground for the recovery of the purchase price of such property, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged.

[2] ID.—PAYMENT OF PURCHASE PRICE—PART PERFORMANCE—STATUTE OF FRAUDS—EQUITY.—Payment of the purchase price of real property under an oral contract to purchase does not of itself constitute part performance, and even if it did, part performance

does not withdraw the transaction from the operation of the stat-
ute of frauds, except for purposes of relief in equity.

[3] ID.—PARTIAL PAYMENT OF PURCHASE PRICE—POSSESSION BY PUR-
CHASER—EFFECT UPON STATUTE OF FRAUDS.—Partial payment of
the purchase price of real property, agreed to be purchased under
an oral contract, even when coupled with the fact that the pur-
chaser has taken possession of the property, will not have the
effect of removing the transaction from the operation of the stat-
ute of frauds.

[4] ID.—FULL EXECUTION BY SELLER—REMEDIES.—If a parol agree-
ment for the sale of real property has been fully executed on the
part of the seller, and nothing remains to be done by the other
than to pay the consideration, relief is generally afforded in law
by permitting the seller to recover, not upon the special contract,
but in *assumpsit* or on the case, upon the promise implied by law,
for the statute of frauds has no application to promises implied
by law.

[5] ID.—ACTION TO RECOVER BALANCE DUE—EXECUTED AGREEMENT—
DELIVERY OF DEED—FINDING—EVIDENCE.—In an action by vendors
to recover a balance due on the purchase price of real property
under an oral contract of sale of the same, the plaintiffs could
not recover on the theory that the transaction involved an exe-
cuted agreement, where there was no evidentiary support for the
finding that there was a delivery by the plaintiffs to the de-
fendants of a deed to the property and an acceptance by the
latter of said deed.

APPEAL from a judgment of the Superior Court of
Amador County. C. P. Vicini, Judge. Reversed.

The facts are stated in the opinion of the court.

T. G. Negrich for Appellants.

Wm. G. Snyder for Respondents.

HART, J.—This is an action for the recovery of the sum
of $1,100, alleged to be the balance due the plaintiffs from
the defendants under an oral contract for the sale by the
former to the latter of approximately 120 acres of land sit-
uated in Amador County.

3. Continuance of existing possession of land as part performance
sufficient to satisfy statute of frauds, note, 9 **Ann. Cas.** 135.

Taking possession of real property as part performance to satisfy
statute of frauds, note, 3 **L. R. A.** (N. S.) 790.

The plaintiffs were given judgment, from which the defendants appeal, under the alternative method.

The plaintiffs are husband and wife. The land involved in the controversy was owned by the plaintiff, Natalina Dondero, she having obtained title to the same through the estate of her deceased father and a deed from her sister, Rosie L. Fregulia. At the time of making the alleged agreement of sale, however, the probate of the estate of her father had not been completed, nor had she received a deed to her sister's interest in the property.

On or about the twenty-fifth day of May, 1920, the said oral agreement was entered into between the parties hereto. By the agreement the defendants were to pay the sum of $1,500 for the land, of which sum $400 was paid in cash at the time of the making of the agreement, and, as the complaint alleges, the balance, $1,100, to be paid "as soon as said Natalina Dondero could procure and record a deed from Rosie L. Fregulia, conveying to her the interest of said Rosie L. Fregulia in the above-described property, and upon the probate of the estate of Maria Cassasa, deceased, and the entry of a decree of distribution therein."

The complaint alleges that the plaintiff, Natalina Dondero, procured a deed from said Rosie L. Fregulia, conveying to her said Fregulia's interest in the property described in the complaint, and that she (said plaintiff) filed the same for recordation with the county recorder of Amador County, on the eighth day of October, 1920; that, on the twenty-seventh day of September, 1920, the probate of the estate of her father, Maria Cassasa, deceased, was completed, and a decree of distribution entered therein, distributing the said property to the said plaintiff; that, on the eighth day of October, 1920, a certified copy of said decree of distribution was filed for recordation in the office of the county recorder of said county; that, on the twenty-seventh day of September, 1920, the plaintiff signed and acknowledged a deed conveying said property to the defendants, "and submitted said deed to defendants for their approval, and tendered its deliverance to them, and demanded the payment of the balance of said purchase price, the said sum of $1100; that defendants thereupon approved said deed and purchased the said property, but requested of plaintiff that payment of the balance of said purchase price . . . be deferred to a future

time, to be paid upon demand by the plaintiffs, and agreed that plaintiffs should retain possession of said deed until the said sum of $1100.00 should be paid." It is further alleged that "on the 16th day of September, 1921, and many times prior thereto and after the 29th day of September, 1920, plaintiff tendered the said deed to the defendants and demanded of defendants that they pay the balance of said purchase price, . . . ; that defendants have neglected and refused to comply with the terms of said contract on their part; that they have paid $400.00 of said purchase price . . . and no more, and have taken possession of said premises; that defendants are now in possession of said premises, and ever since the said 25th day of May, 1920, have been in possession thereof," etc.

The defendants, by their answer, admit, with certain qualifications, certain of the allegations of the complaint and specifically deny the remaining allegations thereof. As a special defense it is alleged that the agreement upon which the plaintiffs base their action was entirely oral and not reduced to writing, and in this connection the statute of frauds (sec. 1624, subd. 5, Civ. Code) is pleaded. The answer also sets up a special defense founded upon alleged fraudulent representations by the plaintiffs to the defendants at the time the agreement was made as to the productivity of the land which is the subject of the alleged agreement. It is alleged in this connection that the defendants, after taking possession of the land and while in such possession, and after, under the most favorable climatic conditions, testing in an appropriate manner the productive capacity of said land, and so finding that said land was not, as to productivity, what the plaintiffs represented it to be at the time of the making of the alleged agreement of sale, immediately notified the plaintiffs of their rescission of the said alleged contract. It is further alleged that it was subsequent to said notice of rescission that the plaintiffs, for the first time, tendered delivery of the deed to the defendants.

The defendants also filed a cross-complaint in which they sought to recover back $300 of the $400 paid by defendants to plaintiffs on the purchase price upon the making of the said agreement, and to which cross-complaint the plaintiffs, by answer, interposed denials.

The findings were in favor of the plaintiffs upon all the essential issues submitted by the pleadings.

[1] An agreement for the sale of real property, or an interest therein, is, as is commonly known, nonenforceable, or furnishes no ground for the recovery of the purchase price of such property, unless the same, or some note or memorandum thereof, is in writing and subscribed by the party to be charged, etc.   [2] And payment of the purchase price does not of itself constitute part performance, and even if it did, "part performance does not withdraw a transaction of this kind from the operation of the statute of frauds, except for purposes of relief in equity." (*Matheron* v. *Ramina Corp.*, 49 Cal. App. 690, 694 [194 Pac. 86, 87]; *Forrester* v. *Flores*, 64 Cal. 24 [28 Pac. 107]; *Davis* v. *Judson*, 159 Cal. 121, 131 [113 Pac. 147].) It will be borne in mind that this is not a suit in which equitable relief is sought, but is an ordinary action at law in *assumpsit*. Therefore, cases in which oral or parol agreements for the sale of real property have upon equitable considerations been justly upheld or enforced have no application to the present case.   [3] Nor do the cases cited by counsel for the plaintiffs lend support to the proposition that partial payment of the purchase price, even when coupled with the fact that the purported vendee has taken possession of the real property which is the subject of a parol agreement of sale, will have the effect of removing the transaction from the operation of the statute of frauds. In fact, one of the cases so cited (*Byers* v. *Locke*, 93 Cal. 493 [27 Am. St. Rep. 212, 29 Pac. 119]), is entirely different from and wholly inapplicable to this case, while the others (*Washington* v. *Soria*, 73 Miss. 665 [55 Am. St. Rep. 555, 19 South. 485], and *Darling* v. *Butler*, 45 Fed. 332 [10 L. R. A. 469]) are opposed to the position taken here by the plaintiffs. Of course, as above stated, equity, looking at such transactions through the lenses of conscience, will, when the facts would render the invalidation of the agreement unconscionable, uphold the parol engagements of the parties, not as in repudiation of the statute of frauds, but wholly upon the theory that, to permit the statute to stand as a shield against the unconscientious conduct of the party seeking to evade them through the agency of the statute, would be offensive to the principles practiced in courts of equity.   [4] Or,

if a parol agreement for the sale of real property has been fully executed on the part of the seller, "and nothing remains to be done by the other than to pay the consideration, relief is generally afforded in law by permitting the plaintiff to recover, not upon the special contract, but in *assumpsit* or on the case, upon the promise implied by law, for the statute has no application to promises implied by law." (2 Reed on Statute of Frauds, sec. 640; *Washington* v. *Soria, supra.*)

[5] All these propositions, however, seem to have been recognized by the trial court and the plaintiffs, for the decision below and the position of plaintiffs there and here are that there was a delivery by the plaintiffs to the defendants of a deed to the land and an acceptance by the latter of said deed, and that, therefore, the transaction involved an executed agreement or transaction. The court made a finding according to this theory, but, as we will now proceed to show, there is no evidentiary support for the finding.

Natalina Dondero, one of the plaintiffs, testified that the agreement of sale was made on the twenty-seventh day of May, 1920 (the complaint, as will be noted, states that the agreement was made on the 25th of May, 1920, but this is not material) ; that, at the same time, the defendants paid to the plaintiffs, on the purchase price of $1,500 the sum of $400; that the defendants thereupon took possession of the premises; that on the twenty-seventh day of September, 1920, all the parties met in the office of the attorney for plaintiffs, at Jackson, Amador County, and that on that occasion said attorney prepared a deed purporting to convey to the defendants said land, the deed having been signed and acknowledged by the plaintiffs before said attorney as a notary public. After the signing and acknowledgment of the deed, the witness proceeded, "they [referring to defendants] took it [the deed] in their hand and then told me to keep it until they gave me the money. . . . They told me to hold that deed until they sold the wine in the cellar; that as soon as they sold the wine they would pay me." She further testified that her husband, after the twenty-seventh day of September, 1920, made a demand on the defendants to pay the balance of $1,100 on the purchase price of the land, and that, on one occasion, when she was present,

both she and her husband demanded such payment, but that the defendants stated, in effect, that they desired to withdraw from or rescind the agreement, as they were not satisfied with the ranch.

The foregoing is in substance all the direct testimony given by the plaintiff, Natalina Dondero, with respect to the matter of the alleged delivery of the deed, and it is clear that a delivery of the deed is not thus shown. On cross-examination, however, Mrs. Dondero repeatedly stated that she did not intend to deliver the deed until the balance of the purchase price was paid. Her testimony so given is as follows: "Q. Where was that deed after it was signed in Mr. Snyder's [attorney for plaintiffs] office? A. I kept it until this came up, and then Mr. Snyder kept it. Q. When your husband went to the defendants to get the $1100, he didn't take the deed with him? A. No. Q. Would you have given that deed to the defendants at any time without first receiving the $1100? A. No. Q. And they never paid that $1100? A. No. Q. Of course, you would be willing to give them a deed now if they would pay you $1100? A. Yes, sir. Q. Understanding what took place in Mr. Snyder's office, when you let them take the deed in their hands, it was your intention that that deed was to belong to you until you got your $1100? A. Yes. Q. And that is your judgment yet? A. Yes. Q. And your intent? A. Yes. And they told me to keep it until they gave me the money. Q. If they had no money, you would not give them the deed? A. I think not."

Constantino Dondero stated that he was in Attorney Snyder's office at the time the deed was prepared and signed by him and his wife. "When I had the deed made," he said, "I went and said: 'Here's the deed. You can pay the balance.' . . . They [defendants] were in the office of Attorney Snyder when the deed was signed." He did not appear to know what occurred or the purport of any conversation which took place in his attorney's office, saying that his wife was carrying on the business at that time and that he probably did not hear "what they were talking about." On cross-examination, the witness testified as follows: "Q. You were in Mr. Snyder's office with your wife and the two defendants when the deed was signed, were you not? A. Yes, sir. Q. Did you see anybody hand the deed to the defend-

ants and the defendants take it into their possession? A. I did not. Q. Did you see Mr. Aparicio or either of the defendants have that deed in their hand at any time? A. I did not. Q. You were there all the time that they were discussing the subject in Mr. Snyder's office, were you not? A. Not all day. I wasn't there all day. Yes, I was there. Q. As I understand you, you would never consent to that deed being given to the defendants until they first paid $1100? Is that right? A. Never give the deed before they paid.''

The foregoing comprises a statement of all the testimony which the record discloses was received upon the question of delivery, and it is plainly manifest therefrom that the finding that the plaintiffs delivered the deed to the defendants is not only without evidentiary support but that the evidence bearing upon the question of the delivery of the deed imperatively calls for a diametrically contrary finding. There is no question of conflict here upon that proposition. As is to be noted, the testimony which has thus far been considered comes entirely from the plaintiffs themselves. It plainly shows that they did not only fail to deliver the deed to the defendants or either of them but that it was not their purpose or intention so to deliver the instrument until the defendants had paid them the balance of the purchase price of the land. And their testimony upon the question of delivery was reinforced by that of the defendants, each of whom testified that he never at any time had physical possession of the deed, nor was the deed ever tendered to him except upon the condition that they would first pay to the plaintiffs the $1,100 balance on the purchase price. Moreover, the testimony of both the plaintiffs and the defendants upon the question of delivery harmonizes with the averments of the complaint, which goes no further than to say that the deed, upon being prepared, was submitted to the defendants for their approval, that they did approve it and that the plaintiffs tendered the delivery thereof to the defendants.

The defendants make no serious claim here that the finding against their cross-complaint is not sufficiently fortified by the evidence.

The issue as to the alleged false representations of the plaintiff as to the productive character of the land does not,

in view of the result at which we have herein arrived, require notice herein.

The judgment is reversed and the cause remanded.

Burnett, J., and Finch, P. J., concurred.