[No. B206854. Second Dist., Div. One. Aug. 1, 2008.]

SHASHIKANT JOGANI, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HARESH JOGANI et al., Real Parties in Interest.

## Counsel

Reed Smith, Margaret Grignon, Judith E. Posner; Krane & Smith, Samuel Krane, Ralph C. Loeb; Akin Gump Strauss Hauer & Feld, Rex S. Heinke and Azra Hot for Petitioner.

No appearance for Respondent.

Bingham McCutchen, Marshall B. Grossman, Daniel Alberstone, Roland Tellis, Sara Jasper Epstein, Frank M. Hinman, Robert A. Brundage and Rachel L. Chanin for Real Parties in Interest.

## Opinion

**ROTHSCHILD, J.**—The trial court determined that plaintiff Shashikant Jogani had no right to a jury trial on his claims for quantum meruit and unjust enrichment, and the court entered an order striking his request for jury trial. Jogani[1] petitioned this court for a writ of mandate directing the trial court to vacate its order. We conclude that the trial court erred because quantum

---

[1] Plaintiff and several defendants have the same last name, but throughout this opinion we will use "Jogani" to refer to plaintiff alone.

meruit is an action at law and thus carries with it the right to a jury trial.[2] We therefore grant the petition.

## BACKGROUND

The facts as alleged in the second amended complaint are as follows: Jogani began investing in residential real estate in 1979. By 1989 he had acquired properties with a total value in excess of approximately $375 million, with equity of approximately $100 million. In the late 1980's and early 1990's, however, a nationwide economic recession, a "virtual depression" in the real estate industry, and other factors adversely affected his business.

Jogani's brothers are partners in an international business enterprise. In the wake of the downturn in Jogani's residential real estate business, his brothers invested in his business, which Jogani continued to manage. By mid-2002, the fair market value of the business's real estate portfolio exceeded $1 billion, with equity of approximately $550 million. The portfolio generates approximately $2 million in net monthly income.

In June 2002, Jogani's brothers forced him out of his business and refused to pay him the full amount to which he was entitled for the work he had done. In February 2003, Jogani filed suit against his brothers and affiliated individuals and entities. His operative second amended complaint alleges breach of contract, breach of fiduciary duty, fraud, conspiracy to defraud, dissolution of partnership, a common count for quantum meruit, unjust enrichment, and constructive trust. On December 3, 2007, the trial court granted summary adjudication in favor of defendants on all of Jogani's claims except quantum meruit and unjust enrichment.

On January 7, 2008, the trial court issued an order to show cause why Jogani's request for jury trial on his remaining claims should not be stricken. After receiving briefs and conducting a hearing, on March 7, 2008, the court entered an order striking Jogani's request for jury trial. Jogani petitioned this court for a writ of mandate directing the trial court to vacate its order. We issued an order to show cause.

## STANDARD OF REVIEW

Whether Jogani is entitled to a jury trial is an issue of law that we review de novo. (*People v. Bhakta* (2008) 162 Cal.App.4th 973, 977 [76 Cal.Rptr.3d 421].)

---

[2] As we discuss in part III., *post*, Jogani's claim for unjust enrichment merely duplicates his claim for quantum meruit and is not a separate cause of action.

## DISCUSSION

### I. Quantum Meruit Is an Action at Law, Not in Equity

Jogani contends that a common count for quantum meruit is a form of the common law action of assumpsit. On that basis, he argues that he has a right to a jury trial on his quantum meruit claim. We agree.

■ "The right to a jury trial is guaranteed by our Constitution." (*C & K Engineering Contractors v. Amber Steel Co.* (1978) 23 Cal.3d 1, 8 [151 Cal.Rptr. 323, 587 P.2d 1136] (hereafter *C&K Engineering*), citing Cal. Const., art. I, § 16.) "The right to trial by jury guaranteed by the Constitution is the right as it existed at common law at the time the Constitution was adopted. [Citation.]" (*People v. One 1941 Chevrolet Coupe* (1951) 37 Cal.2d 283, 286–287 [231 P.2d 832].) Thus, "[t]he common law respecting trial by jury as it existed in 1850 is the rule of decision in this state. [Citation.]"[3] (*People v. One 1941 Chevrolet Coupe,* at p. 287; see *C&K Engineering, supra,* 23 Cal.3d at p. 8.) "[J]ury trial is a matter of right in a civil action at law, but not in equity." (*Southern Pac. Transportation Co. v. Superior Court* (1976) 58 Cal.App.3d 433, 436 [129 Cal.Rptr. 912].)

We consequently must determine whether in 1850 quantum meruit was an action at law. We conclude that it was.

"At early common law, contracts, as we know them, were difficult to enforce in the King's or Queen's courts of England. While contracts under seal were enforced in actions commenced by the writ of covenant and debts were collectible under the writ of debt, damages for breach of informal contracts [i.e., contracts not under seal] was not an available remedy except in local, merchants' and ecclesiastical courts. . . . As the demand for the enforcement of such promises in the Royal courts arose, a remedy was invented to meet it. This remedy was afforded by the writ of assumpsit . . . . Trial was by jury. [¶] In the course of time, this writ was applied to the enforcement of promises actually made, whether express or implied in fact

---

[3] A right of action or remedy created by statute *after* the adoption of the Constitution could not, of course, have been recognized at law or in equity *before* the Constitution was adopted. To ascertain whether such a right or remedy should be treated as legal or equitable for purposes of the right to jury trial, a court must determine whether, in substance, it more closely resembles the pre-1850 rights and remedies of the common law courts or the courts of equity. (See *People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 300 [the right to jury trial "is not limited strictly to those cases in which it existed before the adoption of the Constitution but is extended to cases of like nature as may afterwards arise"].) The issue does not arise in this case, however, because quantum meruit is not a post-1850 statutory creation—it was firmly established by the courts long before 1850. (See *post.*)

from conduct other than words, and also to the enforcement of obligations . . . described as quasi contracts. . . . Thereafter, for some centuries in our legal history, promises were enforced by the use of the common law writ of assumpsit, this word having the literal meaning 'he promised.' " (1 Corbin on Contracts (rev. ed. 1993) § 1.18, pp. 50–51, fn. omitted.) Assumpsit "was available for the collection of debts, whether for reasonable value (*quantum meruit* for services, *quantum valebant* for goods) or for a sum certain. Under this writ, it was permissible to use a simplified form of pleading, the 'common counts,' which are still in use in many jurisdictions that have abandoned other elements of common law pleading." (*Id.* at p. 53, fn. omitted.) California has long permitted the pleading of common counts despite their divergence from the norms of code pleading. (See, e.g., *Weitzenkorn v. Lesser* (1953) 40 Cal.2d 778, 792–793 [256 P.2d 947] [quantum valebant]; *Pike v. Zadig* (1915) 171 Cal. 273, 276–277 [152 P. 923] [money had and received].)

All of this development in the common law writ of assumpsit—from the initial breakthrough allowing enforcement of contracts not under seal to the granting of relief in quasi-contract actions (quantum meruit and quantum valebant) not based on actual promises—took place well before 1850. For example, Blackstone's Commentaries on the Laws of England, the final volume of which was published in 1769, contains the following passage: "If I employ a person to transact any business for me, or perform any work, the law implies that I undertook, or assumed to pay him so much as his labour deserved. And if I neglect to make him amends, he has a remedy for this injury by bringing his action on the case upon this implied assumpsit; wherein he is at liberty to suggest that I promised to pay him so much as he reasonably deserved, and then to aver that his trouble was really worth such a particular sum, which the defendant has omitted to pay. But this valuation of his trouble is submitted to the determination of a jury; who will assess such a sum in damages as they think he really merited. This is called an assumpsit on a quantum meruit." (3 Blackstone, Commentaries 161.)

■ California case law provides ample authority for the proposition that quantum meruit (i.e., a quasi-contract action to recover the reasonable value of services rendered) is a species of assumpsit. (*Langford v. Eckert* (1970) 9 Cal.App.3d 439, 443 [88 Cal.Rptr. 429] ["*quantum meruit*, one of the several forms of assumpsit"]; *Hargiss v. Royal Air Properties, Inc.* (1962) 206 Cal.App.2d 414, 415 [23 Cal.Rptr. 683] [in "an action in *quantum meruit*," the "form of the complaint is in assumpsit"]; *Malvich v. Rockwell* (1949) 91 Cal.App.2d 463, 466–467 [205 P.2d 389] [this action "based on a *quantum meruit*" was a "suit in assumpsit"]; *Hutchinson v. Reclam. Dist. No. 1619* (1924) 67 Cal.App. 488, 489, 495 [227 P. 787]; *Keeling v. Schastey & Vollmer* (1912) 18 Cal.App. 764, 765, 767 [124 P. 445]; *Lacy Mfg. Co. v. Los Angeles Gas etc. Co.* (1909) 12 Cal.App. 37, 40, 43 [106 P. 413]; *Foltz v. Cogswell*

(1890) 86 Cal. 542, 545–546 [25 P. 60]; *Fuller v. Reed* (1869) 38 Cal. 99, 110.) Defendants cite no authority to the contrary.

The case law likewise contains ample authority for the proposition that assumpsit is an action at law, not in equity. (*Morgan v. Morgan* (1963) 220 Cal.App.2d 665, 678 [34 Cal.Rptr. 82] ["assumpsit is an action at law" even though it is "governed by principles of equity"]; *Beard v. Melvin* (1943) 60 Cal.App.2d 421, 424 [140 P.2d 720] ["an ordinary action at law in assumpsit"]; *Philpott v. Superior Court* (1934) 1 Cal.2d 512, 518, 522 [36 P.2d 635] [a "common count[] for money had and received" is an "action[] for *assumpsit*," and " 'the action is one at law' "]; *Dondero v. Aparicio* (1923) 63 Cal.App. 373, 377 [218 P. 608] ["this is not a suit in which equitable relief is sought, but is an ordinary action at law in *assumpsit*"]; *Ventre v. Tiscornia* (1913) 23 Cal.App. 598, 605 [138 P. 954] ["actions at law in *assumpsit*"]; *Garniss v. Superior Court* (1891) 88 Cal. 413, 419 [26 P. 351] ["*assumpsit*, an action at law, and not in equity"].) Again, defendants cite no authority to the contrary.

■ For all of the foregoing reasons, we conclude that quantum meruit was recognized as a form of the common law writ of assumpsit long before 1850, and that the parties to a quantum meruit action consequently have a right to a jury trial. The trial court therefore erred by striking Jogani's request.

## II. Defendants' Arguments Are Not Persuasive

Defendants present several arguments for the conclusion that there is no right to a jury trial in a quantum meruit action. None has merit.

Defendants' principal argument is based on the Supreme Court's opinion in *C&K Engineering*, which contains the following language: " 'In determining whether the action was one triable by a jury at common law, the court is not bound by the form of the action but rather by the nature of the rights involved and the facts of the particular case—the *gist* of the action.' " (*C&K Engineering, supra,* 23 Cal.3d at p. 9, quoting *People v. One 1941 Chevrolet Coupe, supra,* 37 Cal.2d at p. 299.) Defendants reason that "the 'gist' of an action is equitable if it requires the application of equitable doctrines . . . , even if the 'form' or 'label' of the cause of action is historically legal." (Boldface & italics omitted.) According to defendants, Jogani's quantum meruit claim "requires the application of the equitable principle that a contract to pay for services is implied by law for reasons of justice." (Boldface & capitalization omitted.) On that basis, defendants conclude that because the quantum meruit claim requires the application of equitable principles, Jogani is not entitled to a jury trial on it.

The argument fails because it is based on a misreading of *C&K Engineering*, concerning the "gist" of an action. On defendants' reading, even if an action is historically legal (i.e., a common law court before 1850 could have entertained the action and granted the requested relief), for purposes of determining the right to jury trial the action must still be treated as equitable if it "requires the application of equitable doctrines." Therefore, according to defendants, "the application of equitable doctrines" trumps the historical determination that common law courts before 1850 could have entertained plaintiff's action and granted the requested relief, thus making historical analysis unnecessary. *C&K Engineering* does not so hold, however, and neither does any other California case.

■ *C&K Engineering*'s references to the "gist" of the action merely express the rule that "[i]n classifying a given action as legal or equitable, the court looks to its substance, viz., the nature of the rights at issue and the remedy sought. The label attached to a complaint or cause of action does not control. [Citations.]" (*Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 845 [57 Cal.Rptr.3d 363]; see *C&K Engineering, supra*, 23 Cal.3d at p. 9 [in determining whether an action was "triable by a jury at common law," a court "is not bound by the form of the action" but rather looks to its substance, "the *gist* of the action"].) That rule does not provide a way of avoiding historical analysis. Rather, it is a rule about *how* the historical analysis is to be conducted: In determining whether a common law court before 1850 could have entertained a plaintiff's action and granted the requested relief, a court must look past the form or label attached to the plaintiff's claim and discern its substance ("gist"). If the claim is, in substance, one that was cognizable at law before 1850 and seeks relief that could have been obtained at law before 1850, then the action is legal and the right to jury trial attaches, regardless of the extent to which the claim "requires the application of equitable doctrines."

*C&K Engineering* itself illustrates the point. In that case, the plaintiff's complaint "purport[ed] to seek recovery of damages for breach of contract, in form an action at law." (*C&K Engineering, supra*, 23 Cal.3d at p. 9.) The plaintiff's claim, however, was based exclusively on a theory of promissory estoppel, meaning that the plaintiff had given no bargained-for consideration in exchange for the promise that the complaint sought to enforce. Rather, the plaintiff sought to enforce the promise on the ground that the defendant had induced the plaintiff to rely on it, to the plaintiff's detriment. (*Id.* at pp. 5–6, 9.) The Supreme Court determined that because the doctrine of promissory estoppel was not recognized by common law courts before 1850, such courts would have treated the defendant's gratuitous promise as unenforceable. (*Id.* at p. 9 ["*the complaint seeks relief which [before 1850] was available only in equity*, namely, the enforcement of defendant's gratuitous promise . . . through application of the equitable doctrine of promissory estoppel" (italics

added)].) Thus, the court looked past the form or label of the plaintiff's claim (seeking damages for breach of contract) to the substance or "gist" of the claim (seeking to enforce a gratuitous promise through the doctrine of promissory estoppel) and concluded that such a claim could not have been brought in a common law court before 1850.

Jogani's quantum meruit claim, however, is in both form and substance ("gist") a quantum meruit claim—it is a quasi-contract claim for the reasonable value of services rendered. Common law courts entertained such claims and granted the requested relief long before 1850, so the action is at law and carries with it a right to jury trial.

■ Defendants' argument also fails for a second, independent reason. According to defendants, an action is equitable (or its "gist" is equitable) if it requires the application of equitable principles. That is not the law, however, and it never has been. On the contrary, the courts of this state have repeatedly explained that "[t]he fact that equitable principles are applied in the action does not necessarily identify the resultant relief as equitable. [Citations.] Equitable principles are a guide to courts of law as well as of equity. [Citations.]" (*Paularena v. Superior Court* (1965) 231 Cal.App.2d 906, 912 [42 Cal.Rptr. 366]; see also *Raedeke v. Gibraltar Sav. & Loan Assn.* (1974) 10 Cal.3d 665, 674, fn. 4 [111 Cal.Rptr. 693, 517 P.2d 1157]; *Ripling v. Superior Court* (1952) 112 Cal.App.2d 399, 402 [247 P.2d 117] ["even though the case involves equitable principles if it is one where the common law courts could and would grant relief, trial by jury is preserved"]; *Mortimer v. Loynes* (1946) 74 Cal.App.2d 160, 168 [168 P.2d 481]; *Fearey v. Gough* (1943) 61 Cal.App.2d 778, 779 [143 P.2d 711]; *Philpott v. Superior Court, supra*, 1 Cal.2d at p. 523; *McCall v. Superior Court* (1934) 1 Cal.2d 527, 537 [36 P.2d 642] ["a court of law as well as a court of equity applies equitable principles"].) Indeed, the Supreme Court in *C&K Engineering*, reiterated these very principles and did not question them. (*C&K Engineering, supra*, 23 Cal.3d at p. 10.)

Defendants' remaining arguments are similarly unavailing. Defendants rely on our decision in *Van de Kamp v. Bank of America* (1988) 204 Cal.App.3d 819 [251 Cal.Rptr. 530], but it does not support their position. In that case, the plaintiffs' causes of action were styled as claims for breach of fiduciary duty and fraud, but the claims were in substance attempts by trust beneficiaries to enforce the terms of the trust against the trustee. (*Id.* at pp. 831–832, 863–864.) Such actions are equitable, subject to a limited exception where "the trustee is under an immediate and unconditional duty to pay money to the beneficiary." (*Id.* at p. 864; see also 3 Witkin, Cal. Procedure (4th ed. 1996) Actions, § 122, p. 188 ["Actions to establish or to enforce trusts are traditionally equitable."].) If "the liability of the trustee [is] definite and

clear . . . ," then the exception applies and the plaintiff may "maintain an action at law," but "[w]here an accounting is required, the action is equitable. [Citations.]" (*Van de Kamp v. Bank of America, supra*, 204 Cal.App.3d at p. 864.) Thus, because the plaintiffs' claims required an accounting, they were equitable. (*Id.* at p. 865.)

Defendants also contend that Jogani's quantum meruit claim is equitable because it seeks "restitution," which, according to defendants, is an equitable remedy. We disagree. As we have explained, the sole remedy Jogani seeks—the reasonable value of services rendered—was routinely available in common law courts before 1850, so it is a legal remedy. Thus, even though such quasi-contractual relief can be described as "restitution" (see 1 Witkin, Summary of Cal. Law (10th ed. 2005) Contracts, § 1013, p. 1102), that does not make it equitable. On the contrary, as this case illustrates, restitution can be a legal, as opposed to equitable, remedy. (See, e.g., 3 Witkin, Cal. Procedure, *supra*, Actions, § 124, p. 192 ["an action for restitution after a completed rescission . . . is an action *at law*"]; see generally Rest., Restitution, introductory note, pp. 9–10 [explaining that historically restitution was neither exclusively equitable nor exclusively legal]; *id.*, § 5 [describing "[t]he appropriate proceeding in an action at law for the payment of money by way of restitution"].)

We likewise disagree with defendants' contention that Jogani seeks the equitable remedy of an accounting. Although it is true that the second amended complaint's prayer for relief seeks an accounting, the allegations of the complaint make clear (and Jogani concedes) that the accounting was sought only in connection with Jogani's claim for partnership dissolution, a claim that has already been resolved in defendants' favor. On his quantum meruit claim, the only remedy that Jogani seeks is legal: the reasonable value of the services he provided.

Defendants' assertion that the quantum meruit claim "would require . . . a disgorgement of profits" is similarly unpersuasive. Jogani's prayer for relief does not seek a disgorgement of profits, and his quantum meruit claim seeks only what every quantum meruit claim seeks: the reasonable value of services rendered.

■ Finally, defendants present a number of arguments concerning one of the principal cases on which Jogani relies, *Philpott v. Superior Court, supra*, 1 Cal.2d 512. In that case the Supreme Court held that money had and received—one of the common counts of assumpsit—is an action at law. (*Id.* at pp. 518, 526.) The case is one authority among many supporting our analysis, and most of defendants' arguments concerning it are either irrelevant or have already been addressed by our discussion. One remaining issue, however,

merits mention. In *DeGarmo v. Goldman* (1942) 19 Cal.2d 755 [123 P.2d 1], the Supreme Court explained that "[t]he doctrine that when classification is necessary, a court should look to the historical basis of the plaintiff's *right* under the English law in the light of such modifications as have taken place in this country (*Philpott* v. *Superior Court*, [*supra*,] 1 Cal.2d 512 . . .), is not always an accurate one. The equitable characteristics of the *relief* sought must be considered . . . ." (*Id.* at p. 759, italics added.) From this language, defendants infer that an action that is historically legal may nonetheless have "equitable characteristics" sufficient to trump its legal nature, and thus that "California courts have long acknowledged that the historical underpinnings of a cause of action are but one of multiple considerations in determining whether the 'gist' of an action is equitable." We disagree with defendants' reading of the quoted passage. The quotation indicates only that determining the historical treatment of a plaintiff's *right* is not always sufficient to classify an action as legal or equitable for purposes of the right to jury trial. Rather, courts must also consider the *relief* sought. Thus, both the right and the remedy are relevant, but both must be evaluated *historically*. (See, e.g., *C&K Engineering, supra*, 23 Cal.3d at p. 8 [the scope of the right to jury trial " 'is a purely historical question' "].) Here, Jogani is pursuing a claim that was cognizable at law before 1850 and seeks relief that could have been obtained at law before 1850, so he has a right to a jury trial.

### III. The Unjust Enrichment Claim Is Duplicative

 Other than quantum meruit, the only purported cause of action in the second amended complaint that has not already been resolved against Jogani is his claim for unjust enrichment. As Jogani concedes, however, unjust enrichment is not a cause of action. (*Melchior v. New Line Productions, Inc.* (2003) 106 Cal.App.4th 779, 793 [131 Cal.Rptr.2d 347].) Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract. (*Ibid.*)

The only theory of recovery based on the general principle of unjust enrichment that is presented by the allegations of the second amended complaint is the quantum meruit claim. Jogani's attempt to plead a separate cause of action entitled "unjust enrichment" adds nothing. Quantum meruit is the only unresolved cause of action in the second amended complaint.[4]

---

[4] In an action at law, "the trial court has discretion whether to submit an equitable defense [such as unclean hands] to the jury." (*Unilogic, Inc. v. Burroughs Corp.* (1992) 10 Cal.App.4th 612, 622 [12 Cal.Rptr.2d 741].) Because the trial court incorrectly determined that Jogani's claims were not legal, the court had no opportunity to exercise its discretion concerning defendants' affirmative defense of unclean hands. We therefore do not reach the issue.

## DISPOSITION

The petition for writ of mandate is granted. The trial court is directed to vacate its March 7, 2008, order striking plaintiff's request for a jury trial. Petitioner shall recover his costs on this writ proceeding

Mallano, P. J., and Neidorf, J.,* concurred.

A petition for a rehearing was denied August 21, 2008.

---

*Retired judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.