[Civ. No. 2860.  Second Appellate District, Division Two.—February 13, 1919.]

## BUENA VISTA OIL COMPANY (a Corporation), Respondent, v. THE PARK BANK OF LOS ANGELES (a Corporation), Appellant.

BANKS AND BANKING—CHECK PAYABLE TO CORPORATION—UNAUTHORIZED INDORSEMENT BY SECRETARY—MISAPPROPRIATION OF PROCEEDS—LIABILITY OF BANK.—A bank, without previous dealings with a corporation, and unacquainted with its officers or their powers, cannot accept a check, by its terms payable to the order of such corporation, bearing the indorsement only of the payee's name by its secretary, collect the amount of such check, place it to the credit of the person presenting it, refrain from making any inquiries as to the authority of such person, permit him to withdraw the proceeds and escape liability to the payee, in the face of uncontradicted evidence that such person as secretary had no authority to act, and that the moneys withdrawn were devoted to his personal use.

CORPORATION—AUTHORITY OF SECRETARY.—The secretary of a corporation has no authority by virtue of his office as secretary to indorse and collect a check which is payable to the order of the corporation.

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert M. Clarke, Judge Presiding. Affirmed.

The facts are stated in the opinion of the court.

J. Wiseman Macdonald for Appellant.

Oscar Lawler and James E. Degnan for Respondent.

THOMAS, J.—In this action plaintiff, as successor in interest of American Midway Oil Company, seeks to recover of defendant the sum of five thousand dollars. The facts upon which this claim is based are substantially as follows: On or about July 11, 1911, one A. L. Kemper, the secretary of the American Midway Oil Company at Los Angeles, appropriated a check for five thousand dollars, made and forwarded by the Esperanza Consolidated Oil Company at its office in San Francisco to said American Midway Oil Company—and which will be referred to hereinafter as plaintiff—at Los Angeles. Such check was drawn to the order of the plaintiff. It was sent by mail inclosed in an envelope addressed to plaintiff. A. L. Kemper, in the office of plaintiff, opened the letter, extracted the check, and by the use of a rubber stamp indorsed upon the back of such check the words: "American Midway Oil Company —— Sec'y." In the space following the word "'Company" Kemper wrote his own name, and thereunder indorsed the words "A. L. Kemper, Secretary." He deposited the check, thus indorsed, with the defendant, and the said defendant entered same to Kemper's account, as by him instructed. On the 18th of July, 1911, Kemper withdrew one thousand eight hundred dollars, and on the 31st of the same month three hundred dollars more, of the proceeds of said five thousand dollar check collected by the defendant bank by check so drawn upon the defendant, and signed as aforesaid. This money was appropriated by Kemper to his own use. The balance of the five thousand dollars is still retained by defendant. The defendant contends that Kemper was secretary and general manager of said plaintiff from September, 1910, to September 30, 1911, and that the said sum of two thousand one hundred dollars so drawn by Kemper was due him as salary as such secretary and general manager. Plaintiff did not discover the loss of the five thousand dollar check until the latter part of August, 1911, whereupon demand was made upon defendant for the proceeds thereof. On October 3, 1911, two checks, one for four thousand dollars and one for one thousand dollars,

were drawn against said fund in defendant's bank by plaintiff, and upon payment being refused, such checks were duly protested. Thereupon plaintiff brought this suit. Judgment went for plaintiff for five thousand dollars, with interest and costs, from which, and from an order denying its motion for a new trial, defendant appeals.

The complaint declared specifically upon the contention aforesaid, and in four separate causes of action asserted claim for money had and received by and for money loaned to defendant for plaintiff's use. The answer, and the several amendments thereto, after admitting the receipt of the proceeds of said check, in substance interposed the following defenses to plaintiff's said causes of action: (1) That the check in question was not deposited with defendant, nor were any moneys received thereon at the time said check was deposited the property of plaintiff; but that prior to the receipt of such check by defendant it had been indorsed in blank by plaintiff, and thereafter, and prior to such receipt, became the property of A. L. Kemper, secretary; that defendant made collection of said check for the account of said Kemper, and, as already hereinbefore set forth, placed said sum to the credit of such account. (2) That plaintiff is estopped from bringing its action. Subsequent to the trial and prior to judgment, and to comply with the proof and theory of the case, plaintiff, by leave of the court, filed the following amendment to the complaint: "The plaintiff, by leave of the court, first had and obtained, amends its complaint filed herein in the following respects: By striking out all of paragraph V of the first cause of action in said complaint contained, and inserting in lieu thereof the following: 'That thereafter and on or about the twelfth day of July, 1911, said check of five thousand dollars was removed from the office of the plaintiff, in the city of Los Angeles, by A. L. Kemper, secretly and without the knowledge, consent, or authority of plaintiff, and was by said A. L. Kemper, without the knowledge, consent, or authority of this plaintiff, indorsed as follows: "American Midway Oil Company, A. L. Kemper, Sec'y." That thereafter and on or about said twelfth day of July, 1911, said Kemper secretly, and without the knowledge, consent, or authority of this plaintiff, delivered said check to the defendant. That the defendant paid no money or other consideration for said check, or the pro-

ceeds represented thereby, and parted with nothing of value therefor. That subsequently and prior to the first day of August, 1911, there was paid to said defendant by the payee bank in said check named, to and for the use of the plaintiff, the sum of five thousand dollars, represented by said check.' '' The court found against the defendant upon the material issues. Defendant, by certain specifications, attacks many of said findings as being without *sufficient* evidence to support them.

From a careful perusal and consideration of the evidence before us we are of the opinion that the record contains evidence tending to prove every issue. There was conflict in the evidence, and we will not disturb the findings of the trial court upon such testimony. (*Porter* v. *Johnson,* 172 Cal. 456, [156 Pac. 1022].) Notwithstanding the many specifications for insufficiency of evidence, defendant's opening brief complains of but one finding. It therefore follows that the remaining specifications may be deemed abandoned. (*Shepherd* v. *Turner,* 129 Cal. 530, [62 Pac. 106]; *Duncan* v. *Ramish,* 142 Cal. 686, [76 Pac. 661].) The controversy, therefore, so far as we are concerned, centers upon the question: What was the duty of the defendant bank when the check was presented by Kemper? The question of agency is not here involved. It does not appear from the evidence that there was any delegation of authority, or any ''holding out,'' or any transaction of like character with *anyone,* or any dealings of any kind with the defendant, to the knowledge of plaintiff. As is so well said by respondents: ''The latter [defendant] had its selected depositaries. Its by-laws devised, and its directors enforced, a plan for the safeguarding of its funds. The signatures of two of its officers were required to withdraw its funds from such depositaries. Kemper was not one of such officers, nor was the defendant one of such depositaries. The petty cash account is without influence or relevancy in this controversy. Such account was originally kept in the name of L. T. Wells individually. It was continued *by means of Wells' individual check* to the date of the five thousand dollar transaction, in the name of A. L. Kemper, secretary. The account was a small one, not exceeding one hundred dollars at any time. That checks were drawn against such petty cash account, first by Wells, and later by Kemper, to pay for stamps and other like office ex-

penditures of plaintiff, is without significance. The account so maintained was under the sole control of the individual in whose name it was opened. Deposits to the credit thereof were properly made, *because the checks in every case were drawn to the order of, and were indorsed by, the person named in such account.* Its name did not appear thereon, nor did it have any interest therein, to the knowledge of defendant. The officers of the latter testified that they did not know, until after the five thousand dollar transaction, that plaintiff claimed any moneys in their institution. The proof leaves Kemper bare of all power to dispose of the funds of plaintiff. It demonstrates that there was not the slightest basis for defendant's claim of justification, because of Kemper's agency. It forces defendant to the contention that, notwithstanding the utter failure to produce any testimony tending to support its claim, nevertheless the law imposes no penalty upon it. Accordingly, the question for determination may be restated as follows: May a bank, without previous dealings with a corporation, and unacquainted with its officers or their powers, accept a check, by its terms payable to the order of such corporation, bearing the indorsement only of the payee's name by its secretary, collect the amount of such check, place it to the credit of the person presenting it, refrain from making any inquiries as to the authority of such person, permit him to withdraw such proceeds, and escape liability to the payee, in the face of the uncontradicted evidence that such person as secretary had no authority to act, and that the moneys so withdrawn were devoted to his personal use?'' The answer, of course, must be in the negative. The right of said Midway Oil Company to the check in question had not been assigned or transferred by anyone authorized so to do.

Viewing this case in the light of all the evidence and surrounding circumstances, it is clear that Kemper had no authority, express or implied, to sign said check; nor did he have any authority by virtue of his office as secretary. (*Palo Alto etc. Assn.* v. *First Nat. Bank,* 33 Cal. App. 214, [164 Pac. 1124]; *Blood* v. *Marcuse,* 38 Cal. 590, [99 Am. Dec. 435]; *Alta Silver Min. Co.* v. *Alta Placer Min. Co.,* 78 Cal. 629, [21 Pac. 373]; *Asher* v. *Sutton,* 31 Kan. 290, [1 Pac. 535].) In the absence of such authority, a secretary cannot

transfer his principal's property; his authority will not be
presumed, but, on the contrary, must be affirmatively shown
to exist. (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra;
Reed* v. *Buffum,* 79 Cal. 77, [12 Am. St. Rep. 131, 21 Pac.
555] ; *California etc.* v. *Sciaroni,* 139 Cal. 277, [72 Pac. 990].)
It would appear that any prudent and intelligent person
would have been placed on notice by the very presentation
of the check in controversy for deposit, as it possessed within
itself, as we view it, elements of suspicion and irregularity.
Being chargeable with knowledge that the power of such sec-
retary will not be presumed, but must be shown, it was the
duty of the bank, before dealing with such check, to establish
the evidence of the secretary's power.   Defendant contends
that it would place a burden upon bank tellers "if they were
compelled to exercise judicial functions and ascertain the
ownership of funds represented by thousands of checks which
were deposited under similar circumstances, before placing
the same to the credit of the last indorser.   Further, how
much patronage would a bank have if it were to challenge
the honesty of the man making the deposit?"   To our mind
it is not a question of the bank's challenging the honesty of
anyone, but the performance of a duty impressed upon it
by law.   "Desire for 'patronage,' while commendable, should
not be encouraged by the practice of unbusiness-like and
irregular transactions"—as respondent so well puts it.   From
the evidence here it appears that defendant, without making
any inquiry whatever—and Kemper was careful not to offer
any information—accepted the check for collection, forwarded
it to the drawee bank for payment, received the amount, and
still, without making any effort to comply with its duty of
inquiry, and upon Kemper's instruction, placed the amount
to the credit of Kemper, as secretary, and thereafter per-
mitted him to make withdrawals therefrom.   The very name
of the payee, and the attempted indorsement, cast a "shadow"
upon the check, which could have been removed by the per-
formance by the bank of its plain duty under the law—that
of inquiry.   (*Ward* v. *City Trust Co.,* 192 N. Y. 61, [84
N. E. 585] ; *Levy* v. *Irvine,* 134 Cal. 664, [66 Pac. 953].)

The language of the court in the case of *Fresno Canal etc.
Co.* v. *Rowell,* 80 Cal. 114, [13 Am. St. Rep. 112, 22 Pac. 53],
when it said: "The defendant cannot be allowed to shut his
eyes and say he did not see, when by opening them he might

have seen,'' is very apropos here.   There can be no merit in defendant's contention that it was justified in refusing compliance with plaintiff's demand for payment to it of said money because the said check had been generally indorsed. As we have already seen, such was not the case.   Because of the unauthorized indorsement of the check by Kemper, plaintiff's title to the proceeds of said check did not pass to defendant when the latter collected the amount thereof from the drawer's bank, but instead, it became liable to plaintiff for that much money had and received to and for the use of plaintiff.   (*Palo Alto etc. Assn.* v. *First Nat. Bank, supra; Knoxville Water Co.* v. *East Tennessee Nat. Bank,* 123 Tenn. 364, [131 S. W. 447] ; *Ward* v. *City Trust Co., supra.*)   As we view the evidence, and construe the law applicable to this case, there was not the slightest excuse for the act of the defendant bank in so accepting said check.   As we have seen, there were no previous dealings because of which it might be misled.   Kemper said nothing; no inquiry was made of him.   Without any fault upon the part of plaintiff its property was taken and attempted to be disposed of by one having no authority so to do.   Had the defendant bank performed its plain duty here, it would have been saved from its present predicament, and Kemper would have been thwarted in his unlawful scheme.   The whole theory of defendant here, and the very foundation of its argument, is based upon the assumption that Kemper was, at the time the check was received, secretary and general manager of plaintiff.   This was not the case.   He was secretary, but he was not the general manager, and had not been for many months. He never did have authority to do what he attempted to do here, as the evidence in this case, not only abundantly, but conclusively, shows.   Our question is therefore answered by the statement that *the bank should have made inquiry.*

For the reasons above stated, and many others that occur to us not necessary to mention, we are of the opinion that the evidence amply supports the findings complained of by appellant here.   No other point in the record before us merits attention.

Judgment and order affirmed.

Finlayson, P. J., and Sloane, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on April 14, 1919.

All the Justices concurred.