[Civ. No. 12744. Second Dist., Div. One. Jan. 13, 1942.]

T. LLOYD JONES, Respondent, v. BANK OF AMERICA NATIONAL TRUST & SAVINGS ASSOCIATION (a National Banking Association), Appellant.

Louis Ferrari, Edmund Nelson and G. L. Berrey for Appellant.

George H. Moore, Hugh B. Rotchford, F. B. Griffith and Robert E. Ford for Respondent.

WHITE, J.—This is an appeal by defendant bank from an adverse judgment arising out of the cashing of a number of checks by such bank upon which the signatures of the persons named therein as payees had been forged by one Davies, who was an office manager of the brokerage firm which drew the checks. At the time of the misconduct of Davies there was in effect an agreement between the brokerage firm and Ocean Accident and Guarantee Corporation, Ltd. (hereinafter referred to for convenience as the surety company), under the terms of which the latter agreed to reimburse and indemnify the brokerage firm, employer of Davies, for any loss occasioned the employer through embezzlement, etc., on the part of its employee, Davies.

The facts germane to a determination of this controversy are that the brokerage firm, Bennett, Richards & Hill, had its main office in Los Angeles and maintained a branch office in the city of Long Beach. We shall hereafter refer to the brokerage firm as the brokers. Davies was manager of the brokers' Long Beach office. Customers in that office placed securities there for sale, and Davies forwarded them to the Los Angeles office. The securities were sold by the last-named office and the proper officers at Los Angeles drew checks payable to the order of the respective customers for the net proceeds of the sales and sent the checks to Davies at the Long Beach office for delivery to such customers. Instead of delivering the checks to the customers, Davies stole them, forged the indorsement of the payees in blank, added his indorsement, and deposited the checks in his bank account in a branch of defendant bank in Long Beach, which bank received the checks in good faith and without notice of any infirmity in Davies' title. Thereupon defendant bank forwarded such checks to the drawee bank, Citizens National Trust and Savings Bank of Los Angeles, and collected the proceeds thereof, which it paid to Davies in due course.

There was one check, which forms the basis of the fourth cause of action, which differed from all the others in this: The customer had deposited the stock certificate of a corporation called Buffums' with Davies to be sold by the issuing

corporation, which, as a service to its stockholders, handled such transactions. Buffums' sold the stock and sent to Davies a check for $1,950, payable to the customer, one Minnie Butler. That check was drawn on the account of Buffums' in the same branch of defendant bank where Davies maintained his account. The last-named bank cashed that check in good faith on Davies' forgery of the payee's name and paid the amount thereof to Davies.

When Davies' thefts were discovered, the brokers immediately notified the surety company. Thereupon the brokers and the surety company entered into a written agreement which provided that "instead of following the usual procedure covering the payment of claims arising under such bonds," the officers of the brokers and the surety company would confer together with a view to arriving at a settlement direct with the customers, and that "such settlement shall be considered the payment of a direct loss sustained by Bennett, Richards & Hill under said bonds and in diminution of said bonds." The customers were thereafter interviewed by an adjuster of the surety company and an agent of the brokers, and claims were prepared for filing by the customers against the brokers. In each case the claim was for money alleged to be due from the brokers to the customer. The surety company thereupon paid to each customer the amount of his or her claim against the brokers and took from each of such customers an assignment of his or her claim against defendant bank. Simultaneously therewith the customer executed a release to the brokers.

The plaintiff herein is the claims manager of the surety company which executed the agreement under which the losses were indemnified. It was stipulated at the trial that the surety company paid the consideration for the assignments which it took from the customers and will receive any net recovery that is had.

The complaint proceeds upon the theory that the checks were issued to the several payees and when their respective checks were collected by the bank as the same were deposited by the faithless office manager of the brokers, who had no authority to receive or indorse the same, such payees could ratify the collection of the checks from the drawee bank by the collecting bank and hold the latter as for money had and received. All causes of action except the fourth are identical,

and are based upon checks drawn by the brokers. The fourth cause of action is based upon the check drawn by Buffums' upon defendant bank and delivered to the brokers for the payee thereof.

The answer denied that the checks were ever issued, such denial being based upon the theory that with the exception of the Buffums' check, by reason of claimed non-delivery to the payees, such payees never had any interest in the checks, were not therefore damaged by what defendant bank did, and consequently never had a cause of action to assign. The answer also pleaded that the settlement made by the surety company was in fact payment of a loss sustained by the brokers covered by the bond. The answer also pleaded a release, on the theory that if the bank was a wrongdoer in converting the checks, assuming such checks did become the property of plaintiff's assignors (the payees thereof), the brokers, by and through the wrongful act of their agent, Davies, became joint converters and were also released.

As to all causes of action of the complaint other than the fourth the trial court found that on the dates alleged the defendant bank received to and for the use of each payee named the amounts of the respective checks. As to the fourth cause of action it was found that without any authority from the payee of the check therein mentioned defendant bank cashed the same and paid the proceeds thereof to Davies, who had forged the payee's name thereto; that defendant bank had therefore received the amount named in said check from the drawee bank to and for the use and benefit of the payee named in the check. Judgment went for plaintiff against the defendant for the total amount of the checks in question.

Appellant's first ground of appeal is that all of the checks except the one issued by Buffums' were never in fact issued, but were stolen by the drawer's manager while still undelivered in the hands of the drawer, by reason of which, it is asserted, the intended payees of such checks never actually became the payees or owners thereof and never had any interest in them; that as there was no agency between Davies and the payees, the latter could not ratify the receipt of the checks by Davies as a delivery to them.

Because the two classes of checks here involved are governed by different legal considerations, we shall first discuss the group of checks involved in all causes of action except the fourth. The brokers had sold securities belonging to their

customers. Whether such sales were authorized by the customers does not appear, but the record does disclose that in some of the cases the thefts by Davies of the proceeds of such sales were concealed for years, which fact would seem to warrant the inference that in some instances at least the customers were without knowledge that the securities had been sold or that any checks were drawn by the brokers to their order. Section 3097 of the Civil Code provides:

"Every contract on a negotiable instrument is incomplete and revocable until delivery of the instrument for the purpose of giving effect thereto. As between immediate parties, and as regards a remote party other than a holder in due course, the delivery, in order to be effectual, must be made either by or under the authority of the party making, drawing, accepting or indorsing, as the case may be; and in such case the delivery may be shown to have been conditional, or for a special purpose only, and not for the purpose of transferring the property in the instrument. But where the instrument is in the hands of a holder in due course, a valid delivery thereof by all parties prior to him so as to make them liable to him is conclusively presumed. And where the instrument is no longer in the possession of a party whose signature appears thereon, a valid and intentional delivery by him is presumed until the contrary is proved."

In the case at bar, if there was no delivery of the checks to the customers, then they remained the property of the brokers. (*Garthwaite* v. *Bank of Tulare,* 134 Cal. 237 [66 Pac. 326].) In *People* v. *Cassou,* 27 Cal. App. 23 [148 Pac. 810], the defendant was charged with the felonious taking of personal property in violation of section 532 of the Penal Code. The information filed charged him with having induced the indorser on a note, by means of false pretenses, to make and deliver a certain promissory note to him. From the allegations of the information it appeared that the defendant charged therein was himself the maker of the note and there was no averment that the instrument had ever been delivered to the payee. A demurrer to the information on the ground that it did not state facts sufficient to constitute a public offense was sustained by the trial court, and such ruling was upheld on appeal, where the court said: "Neither the note nor the indorsement thereon had any legal existence until delivered to and accepted by the payee." It was accordingly held that because of non-delivery to the payee, the indorser

had no interest in the note and the pleading charged the defendant with nothing more than procuring the indorser's signature to the note by false pretenses.

In support of his claim that his assignors as payees on the check had a right of action against the collecting bank, respondent strongly relies upon the case of *George* v. *Security Trust & Savings Bank,* 91 Cal. App. 708 [267 Pac. 560], wherein the facts were substantially that one Lynch drew his check to the order of one Vanderbilt and gave it to Allen, who had no authority to receive or indorse the same. The drawee bank accepted and certified the check. Allen thereupon forged the payee's name and passed the check to one Cohen; the latter collected the amount thereof from the defendant bank, which in turn collected such amount from the drawee bank. It is true, as contended by respondent, that the court there held that a cause of action was stated against the bank upon the theory of ratification by the payee of the collection of the check from the drawee and that the collecting bank could be held as for moneys had and received; that the payment by the drawee bank to the collecting bank with the forged indorsement thereon is evidence that the check was accepted and paid by the drawee bank, which acts the payee ratified. It is noteworthy, however, that in all the cases relied upon by the court in the cited case the facts were that delivery of the negotiable instrument had been made to the payee thereon. Such also was the fact in the cases of *Palo Alto etc. Assoc.* v. *First National Bank,* 33 Cal. App. 214 [164 Pac. 1124]; *Buena Vista Oil Co.* v. *Park Bank,* 39 Cal. App. 710, 711 [180 Pac. 12], and *Walsh* v. *American Trust Co.,* 7 Cal. App. (2d) 654 [47 Pac. (2d) 323]. True, the court in the George case stated that the maker of the check did not deliver it to the payee thereof, but to Allen, "who had no authority to receive or indorse the same." However, in that case there had been a delivery of the check by the drawer, presumptively made, as is stated in section 3097 of the Civil Code, "for the purpose of giving effect thereto." Where there has been such a release or delivery of the check by the maker, we can readily understand how equitably and legally the defrauded payee might elect to sue the bank, thereby ratifying the receipt of the check by the bank from the forger. This for the reason that after delivery of the check has been made with the intent and purpose of giving effect thereto and it falls into the hands of an unauthorized

person, the rightful payee may charge the bank with having received it as an agent for the use and benefit of the payee and as having dealt with the check as the property of the true payee and therefore bound to pay the proceeds only to him or his order. In other words, under such circumstances the collecting bank holds the funds obtained upon the check for and on behalf of the true owner thereof, and the bank's payment of such funds to the party who committed the forgery or to any person other than the true owner does not discharge its obligation. But in the case with which we are here concerned the checks never left the custody, possession or control of the makers. The brokers' manager, Davies, was their agent and employee. He stole the checks while they were yet within the custody and control of the employers. He was neither ostensibly nor in fact the agent of the payees. Had the checks been transmitted by the brokers to the payees and delivery miscarried, thereby resulting in the checks falling into the hands of one unauthorized to receive them, but who fraudulently indorsed and collected them from the bank, the situation might be different.

So far as ratification is concerned, it is the rule in California that a "ratification can only be effectual between the parties, when the act is done by the agent *avowedly for or on account of the principal, and not when it is done for or on account of* the agent himself, or of *some third person.*" (*Watkins* v. *Clemmer,* 129 Cal. App. 567 [19 Pac. (2d) 303].) Furthermore, in *Schomaker* v. *Petersen,* 103 Cal. App. 558, 570 [285 Pac. 342], it is said: "And ratification is effectually implied only in respect of an act done by a person professedly acting as the agent of the party sought to be charged as principal." By no stretch of the imagination can it be made to appear that Davies, the branch manager of the brokers, who stole, forged and cashed the checks, was even pretending to act as agent of the payees of the checks. Consequently there was nothing that the payees could ratify so as to effectually make the delivery to Davies a delivery to them.

In the instant case the assignment was not made until the payees on the checks as customers of the brokers had been paid in full for their claims against such brokers. In other words, the customers stood upon their claims against the brokers until they were paid. Therefore, whatever cause of action the customers might conceivably have against the bank reverted to the brokers, who caused the claims against

them to be satisfied. When the customers had been paid their respective claims it was too late for them to effect a ratification of the delivery of the checks; and after payment of their claims the customers were left without a claim against anyone.

We shall not discuss the question of subrogation, for the reason that respondent disclaims the existence of the doctrine in the instant litigation; and, as we have heretofore indicated, the customers under the facts of this case had no cause of action against the bank because of non-delivery of the checks to them or anyone in their behalf. Their sole claim was against the brokers. As heretofore stated, they stood upon that claim and obtained payment of the same against the brokers in full. ■ The equitable doctrine of subrogation would not aid the surety company under the facts of this case. (*Meyers* v. *Bank of America,* 11 Cal. (2d) 92 [77 Pac. (2d) 1084].) Almost universally it has been held that the doctrine of subrogation does not apply in favor of a surety company on a fidelity bond against persons who did not participate in the wrongful act of the wrongdoer. Here neither the bank nor the surety company were wrongdoers, but the surety company was required to make good the losses suffered by the brokers under a contractual liability for the assumption of which the surety company was paid a premium. Under such conditions equity will not permit the application of the doctrine of subrogation to compel the bank, admittedly an innocent party, to bear the loss.

So far as the causes of action other than the fourth are concerned, we therefore hold that while the payees on the checks, as customers of the brokers, had a cause of action against the latter which they settled, there never existed under the facts here presented a cause of action against the defendant collecting bank. Consequently such payees had nothing to assign to the surety company or its agent.

■ We come now to a consideration of the check involved in the fourth cause of action of the amended complaint. As heretofore in this opinion narrated, this check was drawn by Buffums' upon the defendant bank and was paid to Davies by a branch of such bank on the forged indorsement of the name of Minnie Butler, the payee. The question of delivery of the check is not involved. As found by the trial court, Minnie Butler had left her Buffums' stock with Davies, the manager of the brokers' Long Beach office. Buffums', as a

service to its stockholders, handled the sale and purchase of its securities. After the receipt by him of Minnie Butler's stock, Davies sent the same to Buffums', who sold it as directed and forwarded the brokers their check for $1,950 payable to Minnie Butler. Forging her name to the check, Davies presented it to defendant bank's branch, upon which it was drawn, received payment thereon, and the bank charged the amount thereof to the account of Buffums'. In this case the check was delivered to the brokers as agent for Minnie Butler, and she therefore became the payee thereof. In connection with the checks heretofore considered, defendant bank was the collecting bank and admittedly received the money upon the checks it cashed, but in the case of the Minnie Butler check the drawee bank did not receive any money. It paid the check, and upon its books erroneously charged the amount thereof against the account of its depositor, Buffums'. That such depositor had a cause of action against the bank for erroneously paying out its funds on deposit cannot be denied; but the question presented to us is whether a drawee bank is liable to the payee of a check whose indorsement thereon has been forged and when payment thereon has been made by the drawee bank upon such unauthorized indorsement. We are convinced that it is firmly established as the law that the payee of a check unaccepted, as was the case here, cannot maintain an action upon it against the bank on which it is drawn. Such holding is based on the principle that there is no privity between the drawee bank and the payee of the check. In the instant case the bank's contract was only with the drawer of the check, Buffums'. The bank never received any money from Minnie Butler; it had no money belonging to her, and never promised to pay her anything. It received money on deposit from Buffums', and its agreement with the latter was that it would return the same to Buffums' when called for or would pay it out upon Buffums' checks. For its failure of duty in this regard by not paying the money to Minnie Butler, the payee, the bank was responsible to its depositor, by reason of its contract with such depositor, but was not responsible to Minnie Butler or anyone else. When the check was not paid to Minnie Butler, the obligation of Buffums' to her was not impaired by the issuance of the check, and she was still entitled to demand her money from her debtor. Therefore Minnie Butler, as the payee of a check unaccepted by her, cannot maintain an action for it against

the bank on which it was drawn. This was the conclusion reached by the Supreme Court of the United States in *First National Bank of Washington* v. *Whitman*, 94 U. S. 343 [24 L. Ed. 229]. The case of *George* v. *Security etc. Bank, supra,* relied upon by respondent, is not controlling here, for the reason that the action there was against a collecting bank, and not, as here, a drawee bank.

From the foregoing it follows that defendant bank being without fault, and plaintiff's assignors having nothing to assign, plaintiff cannot prevail in his action against the appellant bank.

For the reasons herein stated, the judgment is reversed and the cause remanded with directions to the court below to enter judgment for the defendant.

York, P. J., and Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1942. Houser, J., voted for a hearing.