[Civ. No. 26553. Second Dist., Div. Three. Sept. 25, 1963.]

WESLEY E. MORGAN, Plaintiff and Appellant, v. JOSE-PHINE M. MORGAN et al., Defendants and Respondents.

668

Greenberg & Glusker, Philip Glusker and Richard H. Floum for Plaintiff and Appellant.

O'Melveny & Myers, Bennett W. Priest, Kevin O'Connell, Samuel B. Stewart, Robert H. Fabian and George L. Beckwith for Defendants and Respondents.

NOURSE, J. pro tem.*—By his complaint appellant sought judgment against the makers, the drawee banks, the collecting banks and intermediate endorsers of 167 payroll checks issued to him when he was under 18 years of age under a contract of employment as an actor. The complaint contained 19 counts[1] and plaintiff appeals from the judgment of the trial court which was adverse to him on all counts.

Appellant was born March 11, 1940. In 1952 he was employed by Hal Roach Studios, Inc., hereinafter called Roach, to portray a role in a television series. His employment commenced in November 1952 and on the 15th of July, 1953, a written agreement of employment was entered into between appellant and Roach which by its terms was to be effective as of the 17th of November, 1952. On the petition of Roach this contract, with certain modifications not relevant here, was approved by the superior court on August 27, 1953. The contract provided, among other things, that the employer might, until appellant's parents had, in writing, relinquish-

---

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

[1]The first and eighteenth causes of action were directed against Hal Roach Studios, Inc., only, and by reason of its bankruptcy were dismissed.

ed to him his compensation, pay compensation earned under the contract to the parents and that such payment would discharge the obligation of Roach with respect thereto. The gross compensation fixed per photoplay was $200 during the season 1953-1954, $250 during the season 1954-1955, $300 during the season 1955-1956, $350 during the season 1956-1957, and $400 thereafter.[2]

At the time of entering into the contract with appellant, Roach also entered into a contract with appellant's mother, the defendant Josephine M. Morgan, the respondent herein, wherein she released and relinquished to the minor "... all compensation payable to the Minor pursuant to the terms and provisions of the Minor's Contract." This contract was submitted to and approved by the court. At the same time appellant's father filed a relinquishment of his rights to compensation paid to the minor. The relinquishments of appellant's mother and father were executed respectively on the 15th of July, 1953, and the 24th of July, 1953.

Prior to the execution of the written employment contract and prior to the relinquishment to appellant of his earnings, Roach issued to appellant in payment of his wages as an actor 21 checks in the aggregate amount of $3,723.97. Of these, 16 were endorsed by appellant. After appellant's parents had relinquished to him their right to his earnings Roach issued to appellant 93 checks in the aggregate amount of $20,081.05. Of these 93 checks 29 checks in the aggregate amount of $5,791.05 were endorsed by appellant. The endorsement of plaintiff's name was made by his mother on the remaining checks.

As of July 30, 1956, Roach assigned to respondent California Studios, Inc., hereinafter called California, and California assumed all of the rights and obligations of Roach under the employment contract between Roach and appellant. This assignment was, on petition of California, approved by the superior court. The court, by its order, reduced the amount required to be invested into bonds and deposited with the clerk for the benefit of appellant, from 15 per cent to 10 per cent of his gross compensation and directed that appellant's net compensation be paid directly to him. California issued

[2]The court's order approving the contract provided that 15 per cent of the gross earnings was to be invested in United States Savings Bonds to be held by the clerk of the court until appellant obtained his majority and authorized Roach to deduct from the employee's compensation certain taxes and other charges, the balance to be paid as stated above.

to appellant 52 payroll checks in the aggregate amount of $16,086.32. Of these, four checks in the aggregate amount of $2,229.80 were endorsed by plaintiff. Of the remaining 48 checks, 30 checks were endorsed by respondent Herdan-Sherrell Agency, hereinafter called Herdan, and 18 checks were endorsed by appellant's mother. California delivered the above mentioned checks to Herdan at the written direction of appellant. It delivered the checks which were endorsed by appellant's mother to her at appellant's oral direction.

The checks endorsed by Herdan were in the aggregate amount of $7,634.44. Herdan endorsed these checks as trustee for appellant and issued its checks to appellant in the aggregate amount of $6,571, the difference being retained by it as commission.

## THE THIRTEENTH AND FOURTEENTH CAUSES OF ACTION.[3]

By bringing this action appellant attempts to disaffirm his endorsement of the 51 checks endorsed and negotiated by him and by these causes of action he seeks to recover from all subsequent endorsers, including the Bank of America and Security First National Bank, as collecting banks, the amount of the checks endorsed by them.

Appellant asserts that as he was under the age of 18 when the checks were endorsed by him he had the right to disaffirm his endorsement and recover from each endorser the amount of the checks endorsed by them without making reimbursement.

He bases this assertion on the provisions of section 35 of the Civil Code. We are convinced that section 35 is not applicable under the facts here but that the rights of the parties are governed by the provisions of sections 36, 212, and 3103 of the Civil Code.[4] (These statutes, so far as relevant here, are

---

[3]In various counts of the complaint recovery is sought against some of the defendants on all of the checks involved. In other counts of the complaint recovery is sought against the same defendants but upon only a portion of the checks, and, in still other counts of the complaint recovery is sought against other defendants upon but a portion of the checks and it is therefore impossible for us to dispose of this appeal by treating separately the liability of each defendant without repetition.

[4]§ 36. ''A contract, otherwise valid, entered into during minority, cannot be disaffirmed upon that ground either during the actual minority of the person entering into such contract, or at any time thereafter, in the following cases:

''1. A contract to pay the reasonable value of things necessary for his support, or that of his family, entered into by him when not under the

set forth in the note.)

██ The provisions of section 35 of the Civil Code that a minor, under the age of 18, may disaffirm his contract of employment and recover without restitution any consideration that he has parted with under it are designed to protect minors who are not otherwise protected. ██ Section 36 of the Civil Code takes away the minor's right to disaffirm his contract of employment where that contract has been submitted to and approved by the court. The proceedings for the approval of the contract and the court's order approving it take the place of the protection provided the minor by section 35 and, so far as necessary to the accomplishing of the purposes of the contract, protect those who deal with the minor against his right of disaffirmance as to all acts necessary in carrying out the terms of that contract. This is the plain meaning of section 36 where it states ''Such approval may be given upon the petition of either party to the contract . . . ; and said court shall have jurisdiction to approve, *and its approval when given shall extend to the whole of said contract or agreement, and all of the terms and provisions thereof* . . . .'' (Italics ours.) (*Warner Bros. Pictures, Inc.* v. *Brodel,* 31 Cal.2d 766, 774 [192 P.2d 949, 3 A.L.R.2d 691].)[5]

---

care of a parent or guardian able to provide for him or them; provided, that these things have been actually furnished to him or to his family.

''2. A contract or agreement employing such person as, . . . an actor, . . . where such contract or agreement has been approved by the superior court in the county in which such minor resides or is employed. Such approval may be given upon the petition of either party to the contract . . . ; and said court shall have jurisdiction to approve, and its approval when given shall extend to the whole of said contract . . . , and all of the terms and provisions thereof, including, but without being limited to, any optional or conditional provisions contained therein for extension, prolongation or termination of the term thereof.''

§ 212. ''The wages of a minor employed in service may be paid to him, until the parent or guardian entitled thereto gives the employer notice that he claims such wages.''

§ 3103. ''The indorsement or assignment of the instrument by a corporation or by an infant passes the property therein, notwithstanding that from want of capacity the corporation or infant may incur no liability thereon.''

[5]In the cited case which was decided before the language we have just quoted from section 36 was contained therein, the Supreme Court said: ''Section 36 does not prescribe the terms of a contract to perform or render services in the professions specified in the section. It is obvious that a contract of a minor for employment in such professions may reasonably contain many provisions other than those specifying the services to be rendered and the compensation to be paid therefor. Thus, a minor actor may incur obligations to travel, to participate in instruction

■ Under the contract between appellant and his employer his net wages were by virtue of section 212, Civil Code, payable to him upon his parents' relinquishing their right thereto. This provision of the contract was approved by the court. The second order (that made on petition of California), expressly directed payment of the net compensation to appellant. ■ We may, and undoubtedly the court did, take judicial notice that payment of wages is customarily made through the delivery of a check which the employee may negotiate and thereby obtain payment of his wages.

■ The delivery of the checks would not constitute payment of the wages due and the employer's obligation would only be discharged when the checks were honored. (38 Cal. Jur.2d 261, 263.)

■ The appellant had the power to endorse the checks in question and his endorsement thereof passed the property in the checks. (Civ. Code, § 3103.) Appellant asserts that section 3103 does not affect the minor's right upon attaining his majority to disaffirm his endorsement. If this were true, one of the purposes of section 36 of the Civil Code and the order of the court made thereunder, that of protecting the employer against the right of the minor to disaffirm, would be defeated or, at least, its accomplishment would be greatly impeded for if the minor has the right of disaffirmance of checks issued under contracts such as that here, his right to disaffirmance could be exercised against the employer as well as against any other subsequent party. We need not decide here the question whether a minor may, after a check endorsed by him has been cashed and paid, disaffirm his endorsement and recover from the maker and subsequent endorsees, in cases where the checks are not issued pursuant to a contract approved by the court. We do hold that he cannot disaffirm under the circumstances which exist here.

■ Appellant concedes that his endorsement of the

and training deemed necessary by the employer, to refrain from immoral conduct, to attend publicity meetings or social gatherings arranged by the employer, and to cooperate in other respects with the employer in his endeavors to attract the attention of the public to the employee. There was no need for the Legislature to enact provisions with regard to the content of the contracts specified in section 36, for the Legislature made each contract subject to judicial scrutiny to *insure that in the light of the reasonable interests of both parties it adequately protects the interest of the minor.*"

674

checks in question discharged the obligation of California.[6] However, it is appellant's theory that the subsequent endorsers were wrongdoers and were either converters of the monies received by them on the negotiation of the checks or of the checks themselves.[7] There is no merit in these contentions. Appellant's endorsement of the checks was sufficient to pass title to them (Civil Code, § 3103), and to discharge the drawer's obligation to him. Each of the endorsers, therefore, was the rightful holder and owner of the check at the time he endorsed it and the rightful holder and owner of the money that he received upon the endorsement and appellant could not by disaffirming his endorsement turn the endorser's rightful acts into wrongful ones.

▆▆▆▆ By his seventh and eighth causes of action appellant seeks to recover from Herdan the aggregate amount of the 30 checks payable to appellant and received and endorsed by it totalling $7,472.79.[8] The trial court denied appellant judgment except for the sum of $763.44, the amount retained by Herdan as commissions. The seventh and eighth causes of action are based upon the theory that by endorsing the checks Herdan converted the amount collected upon them. By the ninth cause of action he asserts that they converted the checks. By his second cause of action appellant seeks to recover from California, among other amounts, the same $7,472.79 which he seeks to recover from Herdan. It is conceded that appellant, in writing, authorized the delivery of the checks in question to Herdan and that he orally authorized them to endorse his name upon the checks.

▆▆▆▆ Appellant's authorization to Herdan to endorse his name on the checks was a delegation of power and, as such, void under the provisions of section 33 of the Civil Code. ▆▆▆▆ This delegation of power was not something necessary to the accomplishment of the purpose of the contract to have appellant's wages paid to him through the medium of checks but it was an entirely separate and distinct transaction. It follows that· endorsement of appellant's name upon these checks by Herdan was an unauthorized one and that the

---

[6]Appellant has not asserted any cause of action against the drawer on these checks and at oral argument his counsel stated: "There is no effort, there is no claim, there is no cause of action and we are not here suing the California Studios on checks endorsed by the minor . . . ."

[7]The fourteenth cause of action.

[8]The complaint prays for $7,639.39. This amount, however, includes a check which appellant in his brief admits was endorsed by him.

payment of the checks by the drawee bank did not in and of itself discharge California's obligation to appellant. (Civ. Code, § 3104; *Jones* v. *Bank of America,* 49 Cal.App.2d 115 [121 P.2d 94]; *United States Rubber Co.* v. *Union Bank & Trust Co.,* 194 Cal.App.2d 703, 708 [15 Cal.Rptr. 385].)

 Respondent California further asserts that appellant directed that his wages be paid to Herdan and that such payment extinguished its obligation for the wages so paid. It relies on section 1476 of the Civil Code.[9]

This contention cannot be sustained either under the facts or the law. Appellant only directed that the checks be delivered to Herdan. The checks it drew were not payable to Herdan but to appellant. But assuming that appellant's direction to deliver the checks to Herdan and his oral direction to Herdan to endorse and cash them constituted a direction to pay his wages to Herdan, California was not discharged of its obligation for wages. Appellant's right to wages was not personal property in his possession and his direction to pay them to another would be an assignment of a chose in action and void. (Civ. Code, § 33; 1 Witkin, Summary of California Law, p. 127.)

 Respondents also contend that appellant is estopped to assert his right to disaffirm. It may be conceded that all of the elements of estoppel are present if they were to be asserted by an adult but respondent has cited us no authority which holds that a minor may be estopped to assert the right given him by section 35 of the Civil Code to disaffirm his contract. In fact all the authorities which have been called to our attention hold to the contrary. (See *Lee* v. *Hibernia Savings & Loan Soc.,* 177 Cal. 656, 660 [171 P. 677]; *Mahoney* v. *Van Winkle,* 21 Cal. 552; *Lackman* v. *Wood,* 25 Cal. 147, 153; 26 Cal.Jur.2d 668.) What we have just said as to estoppel against a minor is likewise applicable to the claim of his laches.

 However, insofar as Herdan is concerned, the judgment of the trial court must be affirmed. When Herdan endorsed and cashed these checks it converted the funds received and became liable to appellant therefor. When Her-

---

[9]"If a creditor, or any one of two or more joint creditors, at any time directs the debtor to perform his obligation in a particular manner, the obligation is extinguished by performance in that manner, even though the creditor does not receive the benefit of such performance."

dan paid appellant $6,571 it satisfied its obligation[10] to that extent and remained liable to the extent of $763.44 for which amount appellant was awarded judgment.[11]

By his third cause of action appellant seeks to recover against the Bank of America, as drawee, upon 85 checks totalling $22,196.41 and against defendant Security First National Bank, as drawee, upon 31 checks totalling $8,344.21. None of these checks was endorsed by plaintiff. This cause of action is based upon the theory that the banks were obligated to appellant upon the checks and that when they paid the amount of the checks upon unauthorized endorsements they paid out and thereby converted appellant's money. A check does not operate as an assignment of any part of the funds to the credit of the drawer on the bank upon which it is drawn and the bank is not liable to the holder until it accepts or certifies the check. (Civ. Code, § 3265e; *Jones* v. *Bank of America, supra,* 49 Cal.App.2d 115, 123.) That a drawee bank is not liable on the theory of conversion has also been directly decided in *United States Rubber Co.* v. *Union Bank & Trust Co.,* 194 Cal.App.2d 703 [15 Cal.Rptr. 385]. The third alleged cause of action did not state a cause of action.

The fourth, fifth and sixth causes of action are asserted against the Bank of America, California Bank, the Security First National Bank, and the Citizens National Bank, as collecting banks. Before proceeding to the determination of the liability of a collecting bank to a payee named in checks which were received and collected by the bank upon a forged or unauthorized endorsement of the payee, we must dispose of a contention made by the Bank of America as to a portion of the checks sued upon. These checks were drawn on one branch of the Bank of America but deposited for collec-

---

[10]In his seventeenth cause of action appellant asserts that Herdan was obligated to preserve and safeguard for appellant the amount which it collected upon these checks and could only satisfy its obligation to appellant by holding the money until he attained his majority or paying it over to a guardian. He cites no authority to sustain this position and we know of none.

[11]California cannot be held liable for this amount. Appellant's judgment against Herdan is based upon Herdan's conversion of appellant's money received through its unauthorized endorsement and cashing of the checks. He thus ratified the endorsement and cashing of the checks and treated Herdan as holding the money for his use and benefit. The check was thus discharged and California as drawer of the check, was discharged. (See, authorities cited, *supra,* under our discussion of the fourth, fifth, and sixth causes of action.)

tion and collected by another branch of that bank. The bank contends that it is but a single entity and that when a check is drawn on one of its branches but deposited for collection in another branch it is drawn on the bank and that its only obligation is that of a drawee. We cannot agree.

Sections 991, 1010 and 1018 of the Financial Code seem to us to make it clear that a bank and each of its branches are to be regarded as separate entities insofar as their rights and obligations upon checks presented for credit and collection are concerned. Section 991 provides, in substance, that a stop payment order given to one office of a bank shall not constitute notice, actual or constructive, to any other office of the bank or impair its right to be a holder in due course of such check. Sections 1011-1013 provide that a credit allowed by a bank for a check drawn on it shall be provisional and subject to final payment but that the credit *may only be revoked if notice of dishonor or return of the item is given before midnight of the day following its receipt.* Section 1018 provides that an item by or through or payable at one office of a bank and received for deposit or collection at any other office of the same bank shall be *deemed as drawn on, by, through or payable at another bank.* Section 1017 provides that the forwarding or collecting bank may revoke the provisional credit given *at any time before it has received the proceeds of the check in the manner described in the section.*

▮ It has long been the rule in this state that a collecting bank, which has collected from the drawee on a check upon which the payee's endorsement was forged, is liable to the payee. (*George* v. *Security Trust & Savings Bank,* 91 Cal.App. 708 [267 P. 560] ; *Walsh* v. *American Trust Co.,* 7 Cal.App.2d 654 [47 P.2d 323] ; *Jones* v. *Bank of America, supra,* 49 Cal.App.2d 115, 121-122.) The same rule has been adopted in a majority of the states of the Union. (See Notes 31 A.L.R. 1068 ; 67 A.L.R. 1535.) Respondent Bank of America concedes that the prior decisions of our appellate courts have, without exception, announced this rule. They do not attempt to distinguish any of them other than *George* v. *Security Trust & Savings Bank, supra,* which they claim is distinguishable on the grounds that the check in question there was a certified check. The case is, however, not distinguishable on that ground for an examination of it discloses that the check was not certified at the request of a holder of the check but by the one who had stolen it and forged the payee's signature. ▮ A drawee bank only becomes directly liable to the

payee when the check is certified at his request. (See Beutel's Brannan, Negotiable Instruments Law, (7th ed.) pp. 919, 920; 6 Zollmann, Banks and Banking, pp. 221, 222; *State Bank of Chicago* v. *Mid-City Trust & Savings Bank,* 295 Ill. 599 [129 N.E. 498, 12 A.L.R. 989].)

Respondent bank argues that the cited cases are bad law on the basis that the checks do not operate as an assignment of the funds to the payee (Civ. Code § 3265e), and that, therefore, when the drawee paid the collecting banks the amounts of the checks in question they were paying out their money and that, therefore, the collecting banks held no money for the account of the payee. This seems a logical argument but the rule established by the cited cases is based upon the theory that the payee may ratify the collection of the check from the drawee without ratifying the forgery and treat the collection as one for his use and benefit.

Here, appellant, after becoming an adult has, by maintaining this action against the collecting banks ratified the payment of the checks, the checks were thereby discharged, the maker discharged and all endorsers discharged from liability *as such.* (Civ. Code § § 3200, 3201.) The result is that no endorser remains liable to a subsequent endorser and that the only liability of any endorser to appellant must be founded upon their possession of money coming into their possession through the cashing of the checks.

What, then, is appellant's position? It is that he has sought to hold the collecting banks as trustees of constructive trusts and recover from them in assumpsit. While assumpsit is an action at law appellant's right to recover under it is governed by principles of equity and he may only recover if "in justice and right," he is entitled to this money from the banks. (*Philpott* v. *Superior Court,* 1 Cal.2d 512, 522 [36 P.2d 635, 95 A.L.R. 990]; *Mains* v. *City Title Insurance Co.,* 34 Cal.2d 580, 586 [212 P.2d 873].) In our opinion, equity and good conscience do not permit such a recovery here. At the time appellant affirmed the collecting banks' actions in presenting and securing payment of the forged checks he knew that they had no knowledge of his minority or the forgery of his endorsement. He knew that they no longer held the funds collected by them, he knew that these funds had been paid to his mother with his knowledge and consent and, at the same time, he, by his complaint, charged his mother with holding these funds for his use and benefit. It would be against "justice and right" to hold that

the banks still hold these funds as trustees for appellant.

By his sixteenth cause of action appellant seeks to charge his mother, the respondent Josephine M. Morgan, as trustee of all monies received by her from him. There can be no doubt that respondent Morgan held all monies received by her either directly from appellant or through her negotiation of checks endorsed by him or through her unauthorized endorsement of the checks made payable to appellant for appellant's use and benefit. She and her husband had relinquished all their rights to appellant's earnings and those earnings were his property.

The evidence clearly shows, however, that the appellant authorized his mother to use the funds received by her for his and her maintenance. The evidence further shows, and the court found, that respondent Morgan did not have the means to support herself and appellant and did not have the ability to provide such support and that appellant's father had abandoned the appellant.

A minor under the care of a parent who is unable to provide for him may contract to pay the reasonable value of things necessary for his support and that of his family and may not disaffirm such a contract either during his minority or at any time thereafter. (Civ. Code §§ 34, 36.) This being true it must follow that he can authorize the use of funds held for his use and benefit for those purposes and cannot on attaining majority recover the monies paid out for those purposes. (See 2 Williston on Contracts (3rd ed.) pp. 59, 60.)

The trial court found that all of the funds received by respondent Morgan were expended by her for the use and benefit of herself and appellant. This finding is not supported by the evidence for while respondent Morgan testified to that effect the uncontradicted evidence shows that after respondent had ceased to expend any funds for the maintenance of appellant she had on deposit in various accounts a sum in excess of $8,000. All of these accounts were opened by her during the period of time when the court found that she did not have the means or ability to support appellant and herself. Respondent was a trustee of appellant's earnings received by her whether or not they were received directly from him or through her unauthorized endorsement of his checks. She had the right under appellant's authorization to use them for the maintenance and support of herself and appellant if, as the court found, she did not have the ability to support them. The burden, however, was upon her

to show that the funds received were used for the purpose of supplying the necessaries of life for herself and appellant. (Civ. Code §§ 2228, 2235; 49 Cal.Jur.2d 77, 78; *Cox* v. *Schnerr,* 172 Cal. 371 [156 P. 509].) The respondent Morgan offered no evidence to explain how she had accumulated the amount of money that remained in these accounts. If these funds were acquired by her from sources other than appellant's earnings, then her testimony that she did not have the ability to support herself and appellant was untrue and the finding of the court that she did not have such means or ability is unsupported by the evidence. The respondent Morgan offered no explanation of these funds but, in any event, in accounting to appellant she could not charge the funds held by her in trust with expenditures made for the benefit of herself and appellant where she had funds of her own to meet them.[12]

The judgment in favor of the respondents on all causes of action, other than the sixteenth cause of action, is affirmed. The judgment in favor of Josephine M. Morgan on the sixteenth cause of action is reversed.

Shinn, P. J., and Ford, J., concurred.

A petition for a rehearing was denied October 24, 1963, and appellant's petition for a hearing by the Supreme Court was denied November 20, 1963.

---

[12]It may be pointed out here that the earnings of appellant received by respondent Morgan before July 15, 1953, were rightfully hers. (Civ. Code, § 197.)