Filed 8/24/20  Flannery v. Murray CA2/3

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATRICK FLANNERY,<br><br>      Plaintiff, Cross-defendant and Appellant,<br><br>      v.<br><br>ANDREA MURRAY,<br><br>      Defendant, Cross-complainant and Respondent;<br><br>AMERICAN CONTRACTORS INDEMNITY COMPANY,<br><br>      Defendant and Respondent. | B287284<br><br>(Los Angeles County Super. Ct. No. PC056142) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Stephen P. Pfahler, Judge.  Affirmed.

Daneshrad Law Firm and Joseph Daneshrad for Plaintiff, Cross-defendant and Appellant.

Andrea Murray, in pro. per., for Defendant, Cross-complainant and Respondent.

No appearance for Defendant and Respondent American Contractors Indemnity Company.

———————————

Plaintiff, cross-defendant and appellant Patrick Flannery (Flannery) appeals a judgment in favor of defendant, cross-complainant and respondent Andrea Murray (Murray) and defendant and respondent American Contractors Indemnity Company (the Surety).

The essential issues presented are (1) whether the trial court committed instructional error in its response to two jury inquiries during deliberations; (2) whether Flannery's causes of action for conversion and unjust enrichment were well pled; (3) whether this dispute between Murray and Flannery was the proper subject of an accounting; and (4) whether the award of attorney fees to Murray was excessive.

For the reasons discussed below, we perceive no error and affirm the judgment in its entirety.

**FACTUAL AND PROCEDURAL BACKGROUND**

**I.**

**SUMMARY OF RELATED LITIGATION BETWEEN THE PARTIES**

1. *The parties acquired a ranch property together.*

Flannery and Murray had a nonmarital relationship over a period of 20 years. In 1999, they decided to buy an agricultural property together. In January 2003, they closed escrow on a 13-acre horse boarding ranch (the ranch) in Chatsworth that had a small dilapidated house on it. Murray contributed $123,000 from the sale of her family home toward the down payment and improvements, and Flannery contributed $100,000, which he

2

obtained by refinancing his home. They agreed that they would be 50/50 owners. Due to Murray's low credit score, she was not on the loan and was not on title. Flannery reassured her, however, that "we're building all this for the family anyway. . . . [Y]ou know, we're partners." After acquiring the ranch, they ran a horse boarding business on the premises.

2. *The ranch was damaged in a fire, leading to a lawsuit by Flannery and Murray against the Southern California Gas Company (SCGC).*

In October 2008, the ranch was severely damaged by a fire. In October 2009, Flannery and Murray filed a lawsuit against SCGC for allegedly failing to maintain the power lines that had sparked the fire. They anticipated recovering about $3 million in damages.

Flannery and Murray's relationship ended in February 2010, when Murray obtained a restraining order against Flannery.

3. *Murray brought a* Marvin[1] *action against Flannery to determine her half-ownership in the ranch and her right to share in the anticipated fire settlement proceeds; Flannery's cross-complaint.*

In May 2010, Murray filed a *Marvin* action against Flannery. The operative complaint included causes of action for breach of a *Marvin* agreement, fraud, and declaratory relief. Murray pled the parties had agreed that they "were in fact equal partners together in their mutual endeavors," and that "all property [they] acquired belonged to her equally, even if it was titled in [Flannery's] name only." Further, Flannery had

---

[1]     *Marvin v. Marvin* (1976) 18 Cal.3d 660.

promised that her name "would be added to the title of the Chatsworth Ranch at some point after escrow closed," and he made the promise "with the intent to defraud and induce [her] to rely upon [it] so that she sold her home in Garden Grove and contributed the proceeds of the sale of her home towards the down payment for the purchase price of the Chatsworth Ranch and paid for the mortgage payments for the Chatsworth Ranch."

Murray's complaint sought damages, as well as a judicial determination that she was a half-owner of the ranch property, and a declaration that she was an owner of the horse boarding business and also entitled to share in any proceeds that might be obtained in the SCGC lawsuit.

Flannery filed a cross-complaint, alleging causes of action for conversion of a dog, a horse, and the funds and assets of the horse boarding business. He also pled a cause of action for unjust enrichment, and sought an accounting relating to the horse boarding business and the ranch.

4. *During the pendency of the* Marvin *action, the SCGC lawsuit settled and SCGC filed an interpleader action.*

In negotiating a settlement of the SCGC lawsuit, Flannery and Murray were unable to agree how the settlement proceeds should be divided between them. The trial court ruled that the "respective ownership interest[s] of [the parties] in the subject property is not directly relevant to their claims of negligence against [SCGC]. Litigating the issue of ownership interests of the [parties] in this case is unnecessary, as BC438538 [the *Marvin* action] will resolve that dispute."

On February 26, 2013, Flannery, Murray and SCGC settled the SCGC lawsuit, and on March 25, 2013, SCGC deposited

4

settlement funds of $2,450,000 with the court and filed a complaint in interpleader.

5. *In the* Marvin *action, the jury determined that Murray was a half-owner of the ranch, and the trial court determined that Murray was entitled to one-half of the fire settlement proceeds.*

Some of the *Marvin* claims were tried to a jury. Cross-claims by Flannery for conversion were eliminated on nonsuit. In November 2013, the jury returned a special verdict and found, inter alia, that Murray and Flannery had orally agreed to purchase the ranch jointly, and that each was a 50 percent owner. The jury awarded Murray $150,000 in noneconomic damages as well as $68,000 in punitive damages.

Thereafter, in ruling on Murray's request for declaratory relief with respect to her share of the SCGC settlement proceeds, the trial court found Murray was entitled to 50 percent of the SCGC settlement proceeds of $2,450,000. The trial court indicated it "considered the evidence heard during the course of the trial and adopts the findings of the jury." Flannery then appealed the judgment in the *Marvin* action.

6. *During the pendency of Flannery's appeal in the* Marvin *action, Murray successfully moved in the interpleader action for disbursement of $1,225,000 from the SCGC settlement proceeds.*

On August 6, 2015, while Flannery's appeal in the *Marvin* action was pending, Murray filed a motion in the interpleader action for disbursement of $1,225,000, or 50 percent of the SCGC settlement proceeds. On September 11, 2015, the trial court granted Murray's motion and awarded her $1,225,000 of the SCGC settlement proceeds.

Flannery appealed the judgment in the interpleader action.

7. *This court partially reversed the* Marvin *judgment and remanded for a statement of decision on the declaratory relief claim; proceedings on remand.*

Four months after the interpleader court awarded Murray one-half of the settlement proceeds, this court issued an opinion partially affirming the *Marvin* judgment. (*Murray v. Flannery* (Jan. 27, 2016, B255917) [nonpub. opn.].) We affirmed the *Marvin* judgment insofar as it declared Murray a 50 percent owner of the ranch, but we eliminated the $218,000 in tort damages awarded to Murray because those damages amounted to a double recovery. On the declaratory relief issues, we concluded the trial court in the *Marvin* action had jurisdiction to declare the rights of the parties in the proceeds of the SCGC settlement, but that the court erred in denying Flannery's request for a statement of decision with respect to the SCGC settlement proceeds. We therefore reversed the *Marvin* judgment insofar as it awarded Murray 50 percent of the $2,450,000 SCGC settlement proceeds, and remanded for the preparation of a statement of decision in that regard. In all other respects, we affirmed the judgment.

On remand, the trial court issued a statement of decision that provided in relevant part that "[a]s a 50% owner of the Ranch, Murray is entitled to $1,225,000, which represents one-half of the $2,450,000 settlement which has been deposited in the Interpleader Action, less her share, if any, for attorney's fees and costs. These findings are consistent with the jury verdict which the court adopts." Flannery again appealed, challenging the amended judgment in the *Marvin* action.

6

8. *Affirmance of the judgment in the interpleader action.*

After the trial court issued an amended judgment in the *Marvin* action, Division Five of this court, in a published decision, affirmed the judgment in the interpleader action. (*Southern California Gas Co. v. Flannery* (2016) 5 Cal.App.5th 476.)

9. *Affirmance of the amended judgment in the Marvin action.*

Subsequent to the affirmance of the judgment in the interpleader action, this court issued an opinion affirming the amended judgment in the *Marvin* action. (*Murray v. Flannery* (Apr. 30, 2018, B276287) [nonpub. opn.].)

## II.
## THE INSTANT LITIGATION

1. *Pleadings.*

On December 31, 2014, during the pendency of the *Marvin* action and the interpleader action, Flannery filed the instant action. His operative second amended complaint, filed June 9, 2016, pled the following six causes of action against Murray: (1) partition of the horse boarding business; (2) conversion of Flannery's share of the rents and fees generated by the horse boarding business, estimated at $300,000, as well as his share of the goodwill and equipment of the business, estimated at $550,000; (3) the imposition of a constructive trust on the horse boarding business; (4) money had and received of least $300,000, representing the rents and fees generated by the business; (5) unjust enrichment; and (6) breach of fiduciary duty.[2]

---

[2]     Flannery's first six causes of action were directed solely at Murray, and the Surety was named as a defendant only in the seventh cause of action to enforce a bond it had issued in

7

Murray filed a cross-complaint against Flannery alleging causes of action for partition of the ranch real property, breach of fiduciary duty, and an accounting. Murray alleged that she had been operating the horse boarding business sought to be partitioned at a loss, she had been paying for all of the business's operating expenses, and Flannery was responsible for bearing one-half of the losses.

The matter was then tried in three phases.

2. *Trial proceedings.*

   a. *First phase: Murray's cause of action for partition of the real property.*[3]

In the initial phase, which was a bench trial on Murray's cause of action for partition, the court determined that Murray was a 50 percent owner of the ranch, consistent with the judgment in the *Marvin* action. The parties stipulated that the real property would be partitioned by sale.

   b. *Second phase: jury trial and verdict.*

Murray filed a pretrial motion in limine to exclude evidence and argument relating to Flannery's causes of action for conversion, imposition of a constructive trust, money had and received, and unjust enrichment. The trial court granted

---

connection with a preliminary injunction that Murray obtained in a prior action. Although Flannery appealed the judgment as to both Murray and the Surety, the appellant's opening brief did not raise any issues with respect to the seventh cause of action, and the Surety has not filed a respondent's brief.

[3] Flannery voluntarily dismissed his cause of action for partition of the horse boarding business.

Murray's motion in limine with respect to Flannery's causes of action for conversion and unjust enrichment.

After hearing the evidence and arguments of counsel, the jury returned a special verdict which included the following findings: (1) on Flannery's claim for money had and received, the jury found there were no profits from the horse boarding business from October 13, 2008 to the present; (2) on Murray's claim for an accounting, the jury found the horse boarding business had incurred losses during that period in the amount of $326,957.61, and that Flannery, as a 50 percent owner of the business, owed $163,478.80 to Murray; (3) on Flannery's claim for breach of fiduciary duty, the jury found Murray did not fail to act as a reasonably careful partner would have acted under the circumstances in causing the loss of goodwill of the horse boarding business; and (4) on Murray's claim for breach of fiduciary duty, the jury found that Flannery did not make improvements to the property without permits. Thus, the verdict provided for a net award of damages to Murray in the sum of $163,478.80.

c. *Third phase: the remaining equitable claims and the statement of decision.*

In the third phase of the trial, the court considered the evidence presented to the jury and reviewed post-trial briefs on the following causes of action: (1) Flannery's cause of action for imposition of a constructive trust; (2) Flannery's cause of action against the Surety; and (3) Murray's cause of action for an accounting.

After taking the matter under submission, the trial court issued a statement of decision that provided in relevant part: (1) with respect to Flannery's cause of action for imposition of a

9

constructive trust, there was no money or property wrongfully retained by Murray; and (2) with respect to Flannery's cause of action against the Surety, there was an insufficient basis for liability because "[t]he prior court found the preliminary injunction was properly issued and there was no evidence of any damages allegedly suffered by Flannery as a result of the bond."

As for the remaining issue presented by Murray's cross-complaint, namely, her cause of action for an accounting, the trial court adopted the jury's finding that Flannery owed Murray $163,478.80, representing Flannery's 50 percent share of the business losses. The statement of decision provided, "Murray testified that her QuickBooks profit and loss statements were generated by downloading her bank statement directly into the program. The bank statements show the deposits and disbursements relative to the horse boarding business. Flannery did not present any witnesses or documents to challenge any of the entries. [¶] In support of the accounting claim, Murray introduced into evidence her accounting records covering the time period of October 13, 2008 (from the fire) through April 2015 (when the business was closed down). (Trial Exhibits 137–143 and 188.) These profit and loss statements demonstrate a loss of $326,957.61. Murray is entitled to 50% of those losses which totals $163,478.80."

4. *Post-trial motions.*

Murray filed a motion for attorney fees pursuant to Code of Civil Procedure section 874.010,[4] contending she incurred $371,076.66 in attorney fees in connection with the partition

---

[4]     All undesignated statutory references are to the Code of Civil Procedure.

10

claim for the common benefit of the parties, and therefore was entitled to an award of 50 percent of the fees, or $185,538.33, from Flannery. Flannery opposed the motion, arguing that Murray was entitled to recover solely the reasonable fees she incurred in prosecuting her cause of action for partition, and that the fees requested were excessive. After hearing the matter, the trial court awarded fees to Murray in the reduced sum of $105,147.50. The trial court also denied a motion by Murray for prejudgment interest.

Flannery filed motions for a new trial and for judgment notwithstanding the verdict. Following the denial of those motions, Flannery filed a timely notice of appeal from the judgment.

## CONTENTIONS

Flannery contends: (1) the trial court's instructions to the jury in response to the jury's questions during deliberations amounted to reversible error; (2) the trial court erred in dismissing his causes of action for conversion and unjust enrichment; (3) the judgment entered against him on Murray's cause of action for an accounting is contrary to law; and (4) the trial court erred in the amount of attorney fees awarded to Murray on her cause of action for partition.

## DISCUSSION

1. *No merit to claim of instructional error; the trial court acted within its discretion in responding to the two inquiries from the deliberating jury.*

     a. *Standard of review*.

An appellate court "applies the abuse of discretion standard of review to any decision by a trial court to instruct, or not to

11

instruct, in its exercise of its supervision over a deliberating jury." (*People v. Waidla* (2000) 22 Cal.4th 690, 745–746.)

      b. *Proceedings; the court's response to Questions #1 and #2 from the jury*.

By way of background, on Flannery's claim for money had and received, the special verdict form asked the jury to determine whether there were any profits from the "horse boarding business" from October 13, 2008, to the present, and on Murray's claim for an accounting, the special verdict form asked the jury to determine whether there were losses from the "horse boarding business" during that time period.

During deliberations, the court received Question #1 from the jury, which asked whether "horse boarding business" includes all businesses on the property, including the dumping of concrete and dirt, dog boarding and rescue, and goat and rooster breeding, "or just the boarding of horses[?]"

The court responded as follows: "To answer your question, the term horse boarding business in all sections of the verdict form (not just section 1) may include (but you are not required to include) both income and expenses for business on the property, including, the hauling of dirt and/or concrete, dog boarding, other horse boarders, and Ride with Pride. [¶] The Court reminds the jurors that when determining both expenses and income for the above horse business, you must rely solely on the evidence, and not on speculation."

Less than 20 minutes after resuming deliberations, the jury sent Question #2, which stated: "Should the jury consider the 2013 Southern California Gas Company boarding business loss settlement of $550,000 as income to the horse boarding business?"

The court responded as follows: "[T]he jury may (but is not required to) consider whether or not to include the Southern California Gas Company boarding business loss of $550,000 as income to the horse boarding business. [¶] In determining whether and in what amount to consider the above settlement as income, the jury should consider all of the evidence presented in this case, including whether or not the plaintiff, Patrick Flannery, assigned and had given his rights to defendant Andrea Murray, for the business loss as a result of the fire. [¶] If you determine that the above settlement is to be considered as income, you should also consider whether there was any evidence of expenses, including legal fees and costs, to recover those settlement funds, which may reduce the net recovery of the settlement funds."

Flannery contends he duly objected to the instructions below, and that both of these instructions were erroneous because they implied to the jury that the court had a preferred outcome. We reject the contention and conclude the instructions were a proper exercise of the trial court's discretion.

c. *No abuse of discretion in the trial court's response to Question #1 concerning the term "horse boarding business."*

With respect to the trial court's response to Question #1, Flannery contends the court improperly inserted its own analysis of what constituted the "horse boarding business" and the items of potential damages, which were questions of fact that should have been left entirely to the jury. Flannery argues the court's statement that the term horse boarding business "may include (but you are not required to include) both income and expenses for business on the property" improperly attached "undue importance or credibility to the unfavorability of including the

13

income and expense of subject businesses in the 'horse boarding business.' Furthermore, the court's response and instruction reminding and emphasizing that the jurors 'must rely solely on the evidence, and not on speculation' suggested to the jury that including the income and expenses of said businesses are speculative and should not be considered." Flannery asserts that by providing this response to the jury, the trial court overemphasized selected portions of evidence and improperly "ma[d]e prominent selected portions of evidence."

We reject Flannery's characterization of the trial court's response to Question #1. As Murray argues, the trial court's response was neutral and left the jury free to decide, based on the evidence adduced at trial, which activities constituted the "horse boarding business" and what damages were incurred in connection with the business. We do not perceive any abuse of discretion in the manner in which the trial court responded to this inquiry from the jury.

d. *No abuse of discretion in the trial court's response to Question #2 regarding whether a $550,000 settlement payment from SCGC for loss of the horse boarding business should be included as income to the business.*

By way of background, apart from the $2,450,000 settlement from SCGC for property damage to the ranch (the subject of the interpleader), Murray received a $550,000 settlement from SCGC to compensate her for the loss of the horse boarding business. Murray testified that the net amount of her settlement, inclusive of the $550,000 for the business loss and the $1,225,000 for property damage to the ranch, was actually a negative $102,957, after payment of legal fees, expert witness fees, and the cost of compliance and cleaning up the debris after

14

the fire. Flannery's position below was that the $550,000 settlement amount should be included as income to the horse boarding business, to show that the horse boarding business was in fact profitable. In response to the jury's inquiry, the trial court advised the jury that it may, but was not required to consider, the $550,000 settlement amount as income to the horse boarding business, but that if the jury were to determine that the $550,000 is to be considered as income, the jury should also consider whether there was any evidence of expenses, such as legal fees, that might reduce the net recovery of the settlement funds.

Here again, Flannery contends the trial court "improperly suggested" a favored outcome to the jury, by implying that the jury should not consider the $550,000 payment from SCGC as income to the business. He further asserts the court's response was improperly argumentative, and that it attached "undue importance or credibility to the issue of not including the [SCGC] payment of $550,000" in the income of the business. We do not draw any such inferences from the trial court's response to the jury's inquiry, which simply advised the jury that "it may (but is not required to) consider whether or not to include the Southern California Gas Company boarding business loss of $550,000 as income to the horse boarding business."

Flannery also argues the trial court's response was erroneous because it directed the jury to "consider all of the evidence presented in this case, including whether or not the plaintiff, Patrick Flannery, *assigned and had given his rights* to defendant Andrea Murray, for the business loss as a result of the fire" (italics added), but the jury "never received any instruction regarding the issue of assignment. As such, the jury could not

15

possibly consider whether Flannery assigned and had given his rights to defendant."

The argument fails because the record reflects that in objecting to the trial court's proposed response to Question #2, Flannery did not ask the court to define the term "assignment" for the jury. Because the trial court did not have a sua sponte duty to instruct the jury in that regard (*Metcalf v. County of San Joaquin* (2008) 42 Cal.4th 1121, 1130–1131 [trial court in a civil case has no duty to instruct on its own motion]), Flannery's contention the trial court erred in failing to give an instruction on assignment is meritless.

In sum, the trial court acted within the bounds of its discretion in responding to the two questions from the jury.

2. *Trial court properly dismissed Flannery's causes of action for conversion and unjust enrichment for failure to state a claim.*

a. *Proceedings.*

As indicated, Murray filed a motion in limine to exclude any evidence or argument with respect to several of Flannery's causes of action.

The trial court granted Murray's motion in limine with respect to Flannery's causes of action for (1) conversion and (2) unjust enrichment, and thereby dismissed those claims.

The trial court ruled that Flannery's cause of action for conversion was "substantially identical" to the claim for conversion of money that had been nonsuited by Judge Rico in the *Marvin* action, in a decision that had been affirmed on appeal. Additionally, the trial court concluded the conversion claim was not well pled because it failed to identify a discrete sum that allegedly was converted.

16

Similarly, with respect to the cause of action for unjust enrichment, the trial court ruled "such cause of action was previously pursued in the case before Judge Rico, and as a matter of law, there is no cause of action for unjust enrichment."

        b. *The trial court properly treated the motion in limine as a motion for judgment on the pleadings.*

Although motions in limine are ordinarily directed at particular items of evidence, rather than at a plaintiff's entire case (*Clemens v. American Warranty Corp.* (1987) 193 Cal.App.34d 444, 451), a court "may enter judgment in favor of a defendant when motions in limine show that, ' "even if the plaintiff's allegations were proved, they would not establish a cause of action." ' " (*Coshow v. City of Escondido* (2005) 132 Cal.App.4th 687, 701 (*Coshow*); accord, *Baskin v. Hughes Realty, Inc.* (2018) 25 Cal.App.5th 184, 206.) Case law recognizes that "motions in limine also can function as 'an objection to any and all evidence on the grounds [the] pleadings [are] fatally defective' for failure 'to state a cause of action.' [Citation.] In such cases, the in limine motion 'operate[s] as a general demurrer to [the] complaints or a motion for judgment on the pleadings.' [Citations.]" (*K.C. Multimedia, Inc. v. Bank of America Technology & Operations, Inc.* (2009) 171 Cal.App.4th 939, 951–952 (*K.C. Multimedia*).)[5]

---

[5] Contrary to Flannery's argument, the fact the trial court earlier had overruled Murray's demurrer to his causes of action for conversion and unjust enrichment has no bearing on the trial court's subsequent order dismissing those claims for failure to state a cause of action. The failure of a complaint to state a cause of action is never waived, and may even be raised for the first time on appeal. (*Falahati v. Kondo* (2005) 127 Cal.App.4th 823,

17

On appeal from the trial court's determination that the allegations of the pleading do not support relief, our review is de novo. (*K.C. Multimedia, supra,* 171 Cal.App.4th at p. 952.)

### c. *Flannery failed to state a cause of action for conversion as a matter of law.*

The tort of conversion is comprised of three elements: plaintiff's ownership or right to possession of personal property; defendant's disposition of property in a manner inconsistent with plaintiff's property rights; and resulting damages. (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1150 (*Voris*).)

Flannery's cause of action for conversion pled that beginning on February 26, 2010, Murray had converted his "share of rents and fees generated by the horse boarding business in a sum according to proof, but at least $300,000.00," and that in addition, Murray had "converted [his] share of the good will and equipment of the horse boarding business in the estimated value of $550,000.00."

The trial court properly dismissed Flannery's claim for conversion because it asserted a generalized claim for money that allegedly was misappropriated over a period of years, rather than a definite sum capable of identification. The Supreme Court's recent decision in *Voris*, which held that nonpayment of wages does not give rise to a claim for conversion (7 Cal.5th at pp. 1144–1145), is instructive.

---

831, fn. 18.) Further, notwithstanding its prior ruling overruling the demurrer, the trial court had the inherent power to dismiss the challenged causes of action when the motion in limine showed that, " ' "even if the plaintiff's allegations were proved, they would not establish a cause of action." ' " (*Coshow, supra,* 132 Cal.App.4th at p. 701.)

In discussing the applicability of the conversion tort to a claim for money, *Voris* explained: "Although the question was once the matter of some controversy, California law now holds that property subject to a conversion claim need not be tangible in form; intangible property interests, too, can be converted. (*Payne v. Elliot* (1880) 54 Cal. 339, 342 (*Payne*) [recognizing conversion claim related to ownership interests and monetary value represented by stock shares, irrespective of the conversion of tangible stock certificates].) But the law has been careful to distinguish proper claims for the conversion of money from other types of monetary claims more appropriately dealt with under other theories of recovery. Thus, although our law has dispensed with the old requirement that 'each coin or bill be earmarked,' it remains the case that 'money cannot be the subject of an action for conversion unless a specific sum capable of identification is involved.' (*Haigler* [*v. Donnelly* (1941)] 18 Cal.2d [674,] 681; see *PCO, Inc. v. Christensen, Miller, Fink, Jacobs, Glaser, Weil & Shapiro, LLP* (2007) 150 Cal.App.4th 384, 395 (*PCO*).) '[W]here the money or fund is not identified as a specific thing the action is to be considered as one upon contract or for debt'—or perhaps upon some other appropriate theory—but 'not for conversion.' (*Baxter v. King* (1927) 81 Cal.App. 192, 194 (*Baxter*); see *Vu v. California Commerce Club, Inc.* (1997) 58 Cal.App.4th 229, 231, 235 [rejecting conversion claim where the plaintiff could not identify specific sum but only approximate monetary losses]; *PCO*, at p. 397 [same].)" (*Voris*, *supra*, 7 Cal.App.5th at p. 1151.)

Here, Flannery's cause of action for conversion merely pled approximate monetary losses resulting from Murray's alleged conversion of his share of the rents, fees, goodwill and equipment of the horse boarding business—not that Murray converted a

19

specific sum capable of identification.  Because Flannery failed to state a cause of action for conversion, the trial court properly granted Murray's motion in limine.

d. *No cause of action stated for unjust enrichment.*

In his fifth cause of action, unjust enrichment, Flannery pled that from February 26, 2010 to the present, Murray took all the income of the horse boarding business for her sole benefit, and thereby was unjustly enriched.  Thus, the unjust enrichment claim was based on the same set of facts as Flannery's various other claims that alleged Murray misappropriated the profits from the horse boarding business.

In California, "[t]here is no cause of action for unjust enrichment.  Rather, unjust enrichment is a basis for obtaining restitution based on quasi-contract or imposition of a constructive trust." (*McKell v. Washington Mutual, Inc.* (2006) 142 Cal.App.4th 1457, 1490; *Jogani v. Superior Court* (2008) 165 Cal.App.4th 901, 911 ["unjust enrichment is not a cause of action. [Citation.]  Rather, it is a general principle underlying various doctrines and remedies, including quasi-contract"].)

Because Flannery did not, and could not, state a cause of action for unjust enrichment, the trial court properly dismissed

this purported cause of action pursuant to the grant of Murray's motion in limine.[6] [7]

3. *No merit to Flannery's contention that the judgment entered against him on Murray's cause of action for an accounting is contrary to law.*

Flannery contends the judgment entered in favor of Murray on her cause of her action for an accounting, whereby she was awarded $163,478.80 for Flannery's 50 percent share of the business losses, is against law. He relies on the principle that an action for an accounting is not available where the claimant alleges the right to recover a sum certain or a sum that can be made certain by calculation. (*Teselle v. McLoughlin* (2009) 173 Cal.App.4th 156, 179 (*Teselle*).) As explained below, Flannery's challenge to Murray's cause of action for an accounting is meritless.

a. *General principles.*

"A cause of action for accounting requires a showing of a relationship between the plaintiff and the defendant, such [as] a fiduciary relationship, that requires an accounting or a showing

---

[6] We also note the jury's findings that there were no profits from the horse boarding business from October 13, 2008 to the present, and that the business had in fact suffered a net loss of $326,957.61, dispose of Flannery's claim that Murray was "unjustly enriched" by her retention of the income of the horse boarding business.

[7] Because the trial court properly determined that Flannery failed to state a cause of action either for conversion or for unjust enrichment, it is unnecessary to discuss the trial court's ruling that the judgment in the *Marvin* action barred relitigation of these two claims.

that the accounts are so complicated they cannot be determined through an ordinary action at law. (*Brea v. McGlashan* (1934) 3 Cal.App.2d 454, 460; 5 Witkin, Cal. Procedure (5th ed. 2008) Pleading, § 819, p. 236.) 'An action for accounting is not available where the plaintiff alleges the right to recover a sum certain or a sum that can be made certain by calculation. [Citation.]' (*Teselle*[*, supra,*] 173 Cal.App.4th [at p.] 179[.])" (*Fleet v. Bank of America N.A.* (2014) 229 Cal.App.4th 1403, 1413.)

Flannery's contention that the judgment entered against him on Murrray's cause of action for an accounting is against law presents a question of law, which we review de novo. (*Nguyen v. Calhoun* (2003) 105 Cal.App.4th 428, 437 [questions of law are subject to independent review].)

b. *Murray alleged the amount of money that she was due from Flannery was unknown and therefore required an accounting; she did not allege she was owed a sum certain or a sum that was ascertainable without an accounting.*

Murray's cross-complaint pled a cause of action for an accounting, as follows: "13. Since in or about the end of February 26, 2010, [Murray] has been operating the horse boarding business sought to be partitioned by [Flannery]. [Murray] has been paying for all of the operating expenses for the horse boarding business without any contribution from [Flannery] which has been operating at a loss, and [Murray] has been advancing funds to cover the losses. [¶] 14. From in or about the end of February 26, 2010 to April 10, 2015, the horse boarding business sought to be partitioned by [Flannery] has incurred significant losses. [Murray] alleges that [Flannery] is responsible for one-half of the losses. [¶] 15. *The amount of money due from* [*Flannery*] *to* [*Murray*] *is unknown to* [*Murray*]

22

*and cannot be ascertained without an accounting of all expenses
paid by* [*Murray*] *towards the operation of the horse boarding
business.*"  (Italics added.)

Because Murray pled the amount of money that was due
from Flannery was unknown and could not be ascertained
without an accounting, this is not a case in which "the plaintiff
alleges the right to recover a sum certain or a sum that can be
made certain by calculation."  (*Teselle*, *supra*, 173 Cal.App.4th at
p. 179.)

Moreover, the amount of the loss that Murray incurred in
running the horse boarding business, and even whether a loss
existed, could not be ascertained until the matter was fully
litigated.  As indicated, Flannery brought various causes of action
against Murray, including imposition of a constructive trust,
money had and received, and breach of fiduciary duty, all of
which alleged that dating back to February 2010, Murray had
deprived him of the earnings to which he was entitled as a 50
percent partner in the horse boarding business.  Thus, while
Flannery now contends that the amount of Murray's business
losses was readily ascertainable without an accounting, in the
court below Flannery denied that Murray had incurred a loss,
and to the contrary, he contended she had improperly deprived
him of his 50 percent share of the income from the business.
Therefore, the dispute between the parties regarding the profits
and losses at issue made this an appropriate case for an
accounting.

Nonetheless, Flannery contends Murray's accounting claim
was against law and must be set aside because Murray made a
judicial admission, in a post-trial motion for prejudgment
interest, "that the damages awarded by this court were capable of

23

being made certain by calculation."[8] In seeking prejudgment interest, Murray asserted the ascertainability of the damages "was easily demonstrated at trial by reference to the accounting records maintained by Murray." Flannery's reliance on the legal argument that Murray made in her post-trial motion seeking prejudgment interest is misplaced because the trial court rejected Murray's argument and denied her request for prejudgment interest. (See *Victrola 89, LLC v. Jaman Properties 8 LLC* (2020) 46 Cal. App. 5th 337, 357 [party estopped from asserting a position in a legal proceeding that is contrary to a position he or she successfully asserted in the same or some earlier proceeding]; *Textron Inc. v. Travelers Casualty & Surety Co.* (2020) 45 Cal.App.5th 733, 754 [same].)

For these reasons, we reject Flannery's contention that the judgment on the accounting cause of action is against law.

4. *No abuse of discretion in award of attorney fees to Murray.*

Lastly, Flannery contends the award of attorney fees was excessive because the trial court erred in failing to apportion and disallow attorney fees that were unrelated to Murray's cause of action for partition. As discussed below, we find no abuse of discretion.

a. *Governing principles.*

Section 874.010, pertaining to partition actions, authorizes an award of "[r]easonable attorney's fees incurred or paid by a

---

[8] Civil Code section 3287, subdivision (a) allows a litigant to recover prejudgment interest on "damages certain, or capable of being made certain by calculation" from the day such damages are certain or capable of being made certain. (*Warren v. Kia Motors America, Inc.* (2018) 30 Cal.App.5th 24, 43.)

24

party for the common benefit." (*Id*., at subd. (a).) The court is required to "apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable." (§ 874.040.)

With respect to the trial court's decision to award Murray the sum of $105,147.50 in attorney fees, "we review the trial court's ruling for abuse of discretion and will 'interfere with the trial court's determination of the amount of reasonable attorney fees only where there has been a manifest abuse of discretion.' [Citation.]" (*Roe v. Halbig* (2018) 29 Cal.App.5th 286, 310.)

b. *Trial court's ruling.*

After hearing the matter, the trial court awarded Murray attorney fees in the reduced amount of $105,147.50. The court's order stated: "CCP 874.010 provides in relevant part, '[t]he costs of partition include: (a) Reasonable attorney's fees incurred or paid by a party for the common benefit.' [¶] [Flannery] does not dispute that reasonable fees incurred for the prosecution of the partition cause of action are recoverable. . . . *The Court finds that all of the claims and defenses in this case* [*are*] *related to the partition claim. However, the Court finds that the amount of time claimed to have been spent by* [*Murray's*] *counsel is excessive and the time records submitted by* [*Murray's*] *counsel include entries for unrelated litigation.* Additionally, the Court finds that the hourly rates of $650 and $350 charged by [Murray's] counsel are excessive. [¶] Based on the foregoing, the Court finds that the reasonable number of hours spent by attorney Kaufler in relation to the partition and related claims is 386.4 hours at a reasonable hourly rate of $500/hour for a total of $193,200.00. The Court finds that the reasonable number of hours spent by attorney Vesagas in relation to the partition and related claims is 68.38

25

hours at a reasonable hourly rate of $250/hour for a total of $17,095.00. As such, the Court finds $210,295.00 to be the reasonable amount of attorneys' fees [Murray] has incurred in relation to the partition and related claims. [¶] Pursuant to CCP 874.040, the court must apportion the costs of partition among the parties in proportion to their interests or make such other apportionment as may be equitable. In the motion, [Murray] requested that half of the attorneys' fees she incurred be paid by [Flannery]. Therefore, the Court awards [Murray] $105,147.50 in attorney's fees." (Italics added.)

c. *No showing of an abuse of discretion in the amount of the attorney fee award.*

(1) *Flannery has not shown the trial court erred in finding all of the claims and defenses in this case related to the partition claim.*

As indicated, the trial court disallowed fees that were sought for other litigation, but also found that "all of the claims and defenses *in this case* [are] related to the partition claim." (Italics added.) Flannery contends that ruling was erroneous because Murray was only entitled to recover statutory attorney fees that she incurred in connection with *her* partition claim, not her other claims, or his claims against her, and her counsel spent no more than 26.5 hours of attorney time in this case working on her partition claim. The argument is unavailing.

"When a cause of action for which attorney fees are provided by statute is joined with other causes of action for which attorney fees are not permitted, the prevailing party may recover only on the statutory cause of action. However, the joinder of causes of action should not dilute the right to attorney fees. Such fees need not be apportioned when incurred for representation of

26

an issue common to both a cause of action for which fees are permitted and one for which they are not. All expenses incurred on the common issues qualify for an award. (See *Reynolds Metals Co. v. Alperson* (1979) 25 Cal.3d 124, 129–130 [contractual right to fee case].) When the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not, then allocation is not required. [Citation.]" (*Akins v. Enterprise Rent-A-Car Co. of San Francisco* (2000) 79 Cal.App.4th 1127, 1133 [attorney fees incurred on a successful cause of action under the Rosenthal Fair Debt Collection Practices Act, Civ. Code, § 1788 et seq.] (*Akins*); accord, *Bell v. Vista Unified School Dist.* (2000) 82 Cal.App.4th 672, 686–687 (*Bell*) [attorney fees pursuant to the Ralph M. Brown Act, Gov. Code, § 54950 et seq.] (*Bell*).) Upon determining that a statutory award of attorney fees is appropriate, "apportionment of fees . . . rests within the sound discretion of the trial court," and a trial court's exercise of discretion is abused only when its ruling exceeds the bounds of reason, all of the circumstances before it being considered. (*Bell*, *supra*, at p. 687.)

Section 872.140, within the statutory scheme pertaining to partition, provides that "[t]he court may, in all cases, order allowance, *accounting*, contribution, or other compensatory adjustment among the parties according to the principles of equity." (Italics added.) Further, "[e]very partition action includes a final accounting according to the principles of equity for both charges and credits upon each cotenant's interest." (*Wallace v. Daley* (1990) 220 Cal.App.3d 1028, 1035.)

Thus, Murray's cause of action for an accounting was interrelated with her cause of action for partition. Further, even

27

though Flannery dismissed his claim for partion of the horse boarding business before trial, Murray incurred attorney fees in responding to Flannery's partition claim, and in defending against Flannery's related claims that she misappropriated the profits of the horse boarding business that was the subject of his claim for partition. Therefore, the trial court properly found all the attorney fees incurred in the instant action were inextricably intertwined.

Flannery cites *Akins* and *Bell* for the general proposition that the trial court must apportion attorney fees so that the award of attorney fees is limited to those incurred in connection with the statutory claim, but he fails to show the trial court abused its discretion in determining that here, "the liability issues are so interrelated that it would have been impossible to separate them into claims for which attorney fees are properly awarded and claims for which they are not." (*Akins, supra,* 79 Cal.App.4th at p. 1133.)

In this regard, Flannery's opening brief merely cites three invoice entries, which total 26.5 hours and which happen to contain the word "partition," and contends that only those three entries were related to Murray's partition claim. Flannery does not discuss the hundreds of other invoice entries submitted by Murray. Flannery simply would have this court make the assumption that those other entries neither involved, nor were interrelated with, the issue of partition. As a principle of appellate practice and an ingredient of the constitutional doctrine of reversible error, a judgment or order of the lower court is presumed correct, and error must be affirmatively shown. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.) Here, given Flannery's failure to properly brief the issue, we conclude

Flannery has not met his appellate burden to show the trial court erred in finding that "all of the claims and defenses in this case [are] related to the partition claim."

(2) *Flannery has not shown the trial court failed to adequately disallow charges that were unrelated to this lawsuit.*

Flannery contends the trial court failed to adequately disallow charges for unrelated litigation. In support, Flannery's appellate brief specifies 18 entries among the itemized invoices of Murray's counsel, amounting to $6,695.

While Flannery contends Murray was not entitled to recover for these 18 invoice entries, his argument does not take into account the ruling that the trial court actually made. As indicated, the trial court disallowed invoice "entries for unrelated litigation" and it denied more than $80,000 of the attorney fees that Murray requested, on the ground that "the amount of time claimed to have been spent by [Murray's] counsel is excessive and the time records submitted by [Murray's] counsel include entries for unrelated litigation." Given the substantial reduction made by the trial court, far beyond the 18 entries that Flannery is challenging on appeal, we perceive no abuse of discretion in the amount of attorney fees that Flannery was ordered to pay.

29

## DISPOSITION

The judgment is affirmed.  Murray shall recover her appellate costs.


**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**




                                        EDMON, P. J.



We concur:




            LAVIN, J.




            DHANIDINA, J.

30